Estie D. BORGMAN, Appellant–
Plaintiff,

v.

SUGAR CREEK ANIMAL HOSPITAL,
Appellee–Defendant.

No. 93A02–0201–EX–16.

Court of Appeals of Indiana.

Nov. 6, 2002.

Publication Ordered Dec. 19, 2002.

Lawrence Strodtman, L. Strodtman & Associates, Cumberland, IN, Attorney for Appellant.

Mark B. Barker, Orfanos & Alvarado, Eau Claire, WI, Attorney for Appellee.

## OPINION

BAKER, Judge.

This case comes before us once again. In *Borgman v. State Farm Ins. Co.*, 713 N.E.2d 851 (Ind.Ct.App.1999), *trans. denied*, we determined that appellant-plaintiff Borgman's claims for the alleged bad faith denial of her claim for workers' compensation benefits fell within the exclusive jurisdiction of the Worker's Compensation Board (the Board) and that such exclusive jurisdiction does not violate the open courts provision of our state constitution. At this juncture, Borgman contends that the Board erred in denying her claim for worker's compensation benefits and in determining that State Farm Insurance Company (State Farm) did not act in bad faith when denying those benefits. Borgman also claims that this court erred in determining that Indiana Code section 22–3–4–12.1, the statute that places a cap of $20,000 on bad faith damages, is constitutional. Concluding that there was no error with respect to these issues, we affirm.

## FACTS

On July 24, 1995, Borgman fell while working at Sugar Creek Animal Hospital (Sugar Creek) as she cleaned a kennel. As a result of the fall, Borgman bruised her left arm and forearm. She missed one and one-half days of work and received medical attention from her family physician on the day she fell. State Farm paid for that doctor visit.

Thereafter, on February 16, 1996, Borgman voluntarily terminated her employment at Sugar Creek because of personal difficulties that she had experienced with a co-worker. After leaving Sugar Creek, Borgman sought medical treatment for ailments relating to her cervical spine and shoulder area. Dr. Haas, Borgman's family physician, did not think that these problems stemmed from her work at Sugar Creek. He referred Borgman to Dr. John Chase, who treated and released Borgman to return to sedentary work on March 27, 1996.

Nearly three months later, Borgman complained to Sugar Creek that the medical condition regarding her spine and shoulder was related to her July 24, 1995 work injury. Borgman's legal counsel

then contacted State Farm, requesting that it investigate the matter and provide Borgman with workers' compensation benefits. State Farm was to determine whether Borgman's recent medical complaints were related to her left-arm contusions.

State Farm personnel consulted several physicians regarding the cause of Borgman's shoulder and neck pain. Neither Dr. Haas nor Dr. Chase indicated that her neck or shoulder pain was related to her work at Sugar Creek. Dr. John Shay determined on July 25, 1995, that it was "possible" that her new conditions related to her July 24, 1995 fall at work. State Farm then transferred Borgman's medical records to Dr. Martin Lanoff for his professional opinion regarding causation. He unequivocally concluded that Borgman's new medical conditions were not related to the work accident at Sugar Creek.

On July 29, 1996, State Farm notified Borgman's legal counsel that it was denying her claim for additional worker's compensation benefits for the recent shoulder and neck pain. Borgman then requested an emergency hearing on January 13, 1998, where she asked for temporary total disability (TTD) benefits for the period beginning February 16, 1996, to November 24, 1997, claiming that State Farm improperly denied her those benefits. On February 27, 1998, the single hearing member determined that Borgman was not entitled to those disability benefits. The hearing member reserved for a later hearing Borgman's submission of additional medical evidence on this issue, indicating her entitlement to disability benefits. The other reserved issues were whether Borgman was entitled to disability and medical benefits after November 24, 1997, and whether she was entitled to any impairment benefits. That decision was not

appealed by Borgman and became a final award on March 27, 1998.

Sugar Creek voluntarily awarded Borgman worker's compensation benefits on November 27, 1997, whereupon she was treated by several physicians for her medical complaints. Following surgery on her spine, one of the physicians released her for work on February 19, 1998. Inasmuch as Borgman voluntarily quit her employment with Sugar Creek, the company terminated the TTD benefits on February 22, 1998. She did not challenge the disability termination and one of the physicians ultimately awarded Borgman an impairment rating of 13% and Sugar Creek paid Borgman permanent partial impairment benefits (PPI) that corresponded to that rating.

On July 22, 1998, Borgman filed a complaint for damages against State Farm and Sugar Creek alleging that she was wrongfully denied worker's compensation benefits. Both defendants moved to dismiss the action, claiming that the trial court lacked subject matter jurisdiction over the cause. We affirmed the trial court's dismissal on June 9, 1999. *Borgman,* 713 N.E.2d at 856.

Thereafter, on October 6, 1999, State Farm moved to dismiss Borgman's bad faith claim against State Farm on the grounds that the issue had not been preserved for subsequent hearing. That motion was denied and on May 16, 2000, the following issues were tried before the hearing officer: (1) whether new medical documentation that consisted of a physician's deposition testimony entitled Borgman to disability benefits for the period of February 16, 1996, to November 24, 1997; (2) whether Borgman was permanently and totally disabled as a result of her 1995 injury; and (3) whether State Farm acted in bad faith by denying Borgman's claim. Appellant's App. p. 123. On August 10, 2000, the hearing member held that the

new medical documentation entitled Borgman to TTD benefits only for the period commencing from February 16, 1996, until March 27, 1996, that Borgman was not permanently and totally disabled from the Sugar Creek injury, and that State Farm did not act in bad faith in denying her worker's compensation claim on July 29, 1996. Borgman appealed that decision to the Board and the hearing member's decision was affirmed on December 11, 2001 after the Board made additional findings. Borgman now appeals the Board's decision to this court.

## DISCUSSION AND DECISION

### I. Denial of Benefits to Borgman

Borgman first contends that she was wrongfully denied worker's compensation benefits. Specifically, Borgman argues that the Board erred, as a matter of law, in determining that she was not temporarily totally disabled after March 27, 1996, and that the denial of benefits was erroneous because that denial was based on a report by a non-examining physician.

■ In resolving this issue, we first note that Borgman faces a deferential standard of review in her attempt to challenge the Board's findings. *Smith v. Bob Evans Farms, Inc.*, 754 N.E.2d 18, 22 (Ind.Ct.App.2001), *trans. denied.* This court is bound by the factual determinations of the Board and we will not disturb them unless the evidence is undisputed and leads inescapably to a contrary conclusion. *Id.* Moreover, it is the claimant's burden to prove a right to compensation under the Worker's Compensation Act (the Act). *Id.* at 23. In reviewing a decision made by the Board, we will not reweigh the evidence or assess the credibility of the witnesses. *K–Mart Corp. v. Morrison*, 609 N.E.2d 17, 27 (Ind.Ct.App.1993), *trans. denied.*

■ We also note that in seeking appellate review of the Board's adverse determination, Borgman is appealing from a negative judgment. A negative award may be sustained by an absence of evidence favorable to the claimant's contentions or by the presence of evidence adverse to the claimant's arguments. *Smith,* 754 N.E.2d at 22.

In the instant case, the record demonstrates that the only additional medical documentation that Borgman presented on the issue that she was disabled and wrongfully denied worker's compensation benefits was Dr. Chase's deposition testimony. The Board determined that this report was not sufficient to find her disabled for the full period beginning February 16, 1996, until November 27, 1997. The Board also indicated that it only relied upon Dr. Chase's opinions to find that Borgman was temporarily totally disabled as a result of her work related injury until March 27, 1996, but not thereafter.

■ To obtain disability benefits under the Act, Borgman must establish that she was disabled and unable to work for the period at issue. Dr. Chase testified at his deposition that Borgman was partially disabled on March 27, 1996, but there were other types of work that she could have performed. Appellant's App. p. 85. Moreover, Dr. Chase unequivocally stated that he did not think that Borgman was permanently disabled at any time. It was his testimony that Borgman could perform sedentary work after February 16, 1996. Appellant's App. p. 91–92, 101. Dr. Chase, however, did not indicate in his medical reports until March 27, 1996, that she was capable of performing work at a sedentary level. Thus, it was reasonable under those circumstances for the Board to have interpreted Dr. Chase's deposition testimony that Borgman could not work at any job until it was determined that her condition

had improved to the extent that she could perform sedentary work on March 27, 1996.

■ Notwithstanding the above, Borgman asserts entitlement to temporary partial disability benefits (TPD) because Sugar Creek did not offer her any work in accordance with her ability to perform sedentary work. Borgman, however, did not preserve the issue of her entitlement for such benefits at the May 16, 2000 hearing. Also, because Borgman voluntarily terminated her employment with Sugar Creek due to reasons unrelated to her work injury, Sugar Creek did not have a duty to offer her work according to medical restrictions or to remit any TPD benefits to her. Thus, the Board properly determined that Borgman was unavailable for work for reasons that were not related to her work injury. Indiana Code section 22–3–3–7(c)(5), which provides that TTD benefits "may not be terminated by the employer unless the employee is unable or unavailable to work for reasons unrelated to the compensable injury," commands such a result in this instance. It is thus apparent that the Board concluded that Borgman failed to meet her burden of proof that she was entitled to disability benefits for the full period of February 16, 1996, to November 24, 1997, and that conclusion is supported by the evidence.

Borgman goes on to argue, however, that the Board's decision may not stand because the hearing officer erroneously admitted Dr. Lanoff's medical report into evidence. In essence, Borgman claims that it was error to admit the report because Dr. Lanoff never physically examined her. Borgman thus contends that it was State Farm's duty to follow Dr. Shay's advice, the attending physician, to provide her with necessary surgery. Again, we must note that Borgman failed to appeal the single hearing member's decision that

was made on February 27, 1998, denying the benefits at issue. Even so, it was Dr. Chase who had the primary responsibility of caring for Borgman. Dr. Chase had already released Borgman from his care, and he did not recommend that Borgman undergo spinal surgery.

When State Farm referred Borgman to Dr. Shay for a medical evaluation on June 25, 1996, Borgman, just prior to that date, had reported the new injuries to State Farm personnel that were completely different than the previously documented work injuries. State Farm requested that Dr. Shay determine whether Borgman's new injuries were related to those that occurred on July 25, 1995. Dr. Shay equivocally stated that it was "possible" Borgman's new medical problems were related to her July 24, 1995 work accident. He also acknowledged, however, that it was "possible" that those injuries could have been caused by some other factor. Appellant's App. p. 42–46. Moreover, Dr. Chase, Borgman's own physician, did not determine the cause of her shoulder and neck injuries. Thus, as of June 25, 1996, State Farm had no clear indication whether Borgman's new injuries were related to her work accident or whether they were caused by some activity outside the work place.

Regarding the admissibility of Dr. Lanoff's report, Indiana Code section 22–3–3–6(e) provides that medical reports may be admissible into evidence, notwithstanding any hearsay objection, if the report meets the statutory requirements. That statute provides in relevant part that:

All statements of physicians or surgeons required by this section, whether those engaged by employee or employer, shall contain the following information:

(1) The history of the injury, or claimed injury, as given by the patient.

(2) The diagnosis of the physician or surgeon concerning the patient's physical or mental condition.

(3) The opinion of the physician or surgeon concerning the causal relationship, if any, between the injury and the patient's physical or mental condition; including the physician's or surgeon's reasons for the opinion.

(4) The opinion of the physician or surgeon concerning whether the injury or claimed injury resulted in a disability or impairment and, if so, the opinion of the physician or surgeon concerning the extent of the disability or impairment and the reasons for the opinion.

(5) The original signature of the physician or surgeon.

Notwithstanding any hearsay objection, the worker's compensation board shall admit into evidence a statement that meets the requirements of this subsection unless the statement is ruled inadmissible on other grounds.

I.C. § 22–3–3–6(e). Here, Dr. Lanoff provided the history of Borgman's injury, her diagnosis, his opinion on the cause of her injury, and he signed the report. Appellant's App. p. 104–10. He concluded unequivocally that Borgman's complaints of pain to her "cervical spine and left upper extremity [were] not related to the fall in July 1995." Appellant's App. p. 104–10. Contrary to Borgman's claim, there was no need for Dr. Lanoff to comment on any impairment, for he determined her injuries were not related to her work with Sugar Creek. Thus, the report was admissible.

## II. Bad Faith by State Farm

Borgman next contends that the Board erred in determining that State Farm did not act in bad faith in denying the claim for worker's compensation benefits. Specifically, Borgman argues that State Farm's action of rejecting the recommendations of their own treating physicians were "malicious" because of the length of time that she had to suffer before finally receiving medical treatment. Appellant's Br. p. 17–18.

 We initially observe that the single hearing member determined that there was an absence of evidence favorable to Borgman's claim. Thus, her allegation that State Farm's actions constituted bad faith necessarily fails because Borgman did not meet her burden of proof of the underlying claim that she was improperly denied worker's compensation benefits.

Additionally, at the May 16, 2000 hearing, the State Farm claims adjuster, Wendi Meier, testified as to when she was first notified of Borgman's claim for benefits and how the claim was administered. Meier stated that Borgman first injured only her left arm and forearm on July 24, 1995. At that time, Borgman never indicated that she was experiencing any neck or shoulder pain. Borgman worked until February 16, 1996, without complaining of such pain, and she never sought medical treatment for those alleged ailments. Meier went on to testify that State Farm initially learned of Borgman's new request for worker's compensation benefits for her neck and shoulder pain on May 29, 1996, approximately three months after she voluntarily left Sugar Creek. At that time, Borgman's legal counsel contacted State Farm and requested that it investigate the claim. State Farm then immediately arranged for Dr. Shay to examine Borgman on June 25, 1996, to determine whether her complained-of shoulder and neck pain was related to the July 24, 1995 injury. As set forth above, Dr. Shay stated that it was merely possible that Borgman's neck pain could have been related to her initial fall. Thus, Meier concluded that this was not sufficient for her to determine compensability of the claim, and she sought an

independent medical opinion regarding compensability.

Dr. Lanoff reviewed the medical evidence in this case up to July 9, 1996, and unequivocally reported that Borgman's current complaint of pain to her cervical spine and left upper extremity were not related to the fall in July 1995. Inasmuch as there was substantial competent evidence of probative value to support the hearing member's August 10, 2000 decision that the Board affirmed, we decline to disturb that determination. Even more compelling, there is absolutely no evidence here that State Farm acted in bad faith when denying Borgman's claim.

### III. Constitutionality of Limitation on Bad Faith Damages

Finally, Borgman contends that the $20,000 limitation placed on bad faith damages pursuant to the bad faith statute, Indiana Code section 22–3–4–12.1, is unconstitutional. Specifically, she argues that such a cap violates the "open courts" provision of the Indiana Constitution, which is set forth in Article I, Section 12.

We note that Borgman initially challenged the constitutionality of this statute in her first appeal, albeit on different grounds. *Borgman,* 713 N.E.2d at 855. We determined that the bad faith statute merely restricts the remedy available for a breach of duty imposed upon the worker's compensation insurance character and designates the proper forum for bringing claims against the worker's compensation insurance carrier. *Id.* at 856. We therefore concluded that there was no constitutional violation.

Additionally, we note that we need not address Borgman's subsequent challenge to the constitutionality of this statute, inasmuch as we have already determined that she failed to carry her burden of proof on the issue of whether State Farm committed bad faith. Thus, Borgman may not succeed on this claim.

### CONCLUSION

In light of the disposition of the issues set forth above, we conclude that the Board properly denied Borgman's claim for worker's compensation benefits and that State Farm did not act in bad faith when those benefits were denied. Finally, Borgman may not succeed on her claim that the bad faith statute is unconstitutional.

Judgment affirmed.

VAIDIK and BARNES, JJ., concur.

### ORDER

This Court heretofore handed down its opinion in this appeal on November 6, 2002, marked Memorandum Decision, Not for Publication;

Comes now the Appellee, by counsel, and files herein Motion for Publication of Appellate Division, alleging therein that the decision, if published, would help illuminate for the practitioner, the application of recently promulgated I.C. 22-3-4-12.1 in that there are few published decisions on this code section and the facts reported in this case are the typical facts that come into play in a Worker's Compensation case.

The Court having examined said Motion, having reviewed its opinion in this case and being duly advised, now finds that said Motion for Publication should be granted and that this Court's opinion heretofore handed down in this case marked Memorandum Decision, Not for Publication, should now be published.

IT IS THEREFORE ORDERED as follows:

1. The Appellee's Motion for Publication of Appellate Decision is granted and this Court's opinion heretofore handed down in

this cause on November 6, 2002, marked Memorandum Decision, Not for Publication is now ordered published.