**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jan 12 2012, 8:13 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**SANDRA O'BRIEN**
MINDEL & ASSOCIATES

ATTORNEY FOR APPELLEE:

**LEONARD M. HOLAJTER**
LAW OFFICES OF LIBERTY
MUTUAL GROUP
Merrillville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JASON QUINN, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 93A02-1108-EX-698 |
| | ) | |
| ACCURATE BUILDERS, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE INDIANA WORKER'S COMPENSATION BOARD
The Honorable Linda Hamilton, Chairperson
Cause No. C-180445

**January 12, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Claimant, Jason Quinn (Quinn), appeals the decision of the Full Worker's Compensation Board (Board) denying his application for adjustment of claim.

We affirm.

## ISSUE

Quinn raises one issue, which we restate as: Whether the evidence was sufficient to support the Board's conclusion that Quinn is not entitled to permanent and total disability benefits.

## FACTS AND PROCEDURAL HISTORY

Quinn was a carpenter for Accurate Builders. On March 20, 2004, Quinn worked on a wooden deck, standing underneath it. The deck's temporary supports gave way and collapsed on him. The deck weighed between 3,000 to 4,000 pounds and three workers were on top of the deck when it collapsed. Quinn was taken to St. Anthony's Hospital in Crown Point, Indiana, but was later transferred to Northwestern Hospital's spine trauma center in Chicago, Illinois. Dr. Michael Haak (Dr. Haak) became Quinn's treating physician who diagnosed Quinn with a burst fracture of the third lumbar vertebra and partial spinal cord injury.

On March 24, 2004, four days following the accident, Quinn underwent spinal fusion surgery. On November 1, 2004, following a period of worsening symptoms, Quinn had a second spinal fusion surgery. On March 1, 2005, Dr. Haak noted that Quinn's severe pain had reached a plateau. On May 20, 2005, Quinn had a third spinal

2

fusion surgery and removal of hardware. Quinn's pain decreased following the third spinal fusion surgery. On July 28, 2005, Dr. Haak noted that Quinn's pain level was level five or six out of ten. On September 8, 2005, Dr. Haak noted that Quinn's pain was level five out of ten, that a solid spinal fusion had not yet occurred, and that Quinn had a neurologic condition resulting from his spinal cord injury. By November 3, 2005, Quinn's progress had improved and his pain level was a five. Dr. Haak kept Quinn off work during the foregoing time period.

On June 1, 2006, Dr. Haak noted that Quinn's pain had stabilized to level four. Dr. Haak released Quinn to return to work the following Monday at a medium level with some restrictions based on a functional capacity evaluation. Quinn began working about 21 hours per week, albeit with low back pain. On August 1, 2006, Dr. Haak cleared Quinn to work up to 30 hours per week, but opined that Quinn needed long term pain management and that no further surgeries could help him.

On September 12, 2006, Quinn saw Dr. Shanu Kondamuri (Dr. Kondamuri) for pain management. Dr. Kondamuri noted that Quinn complained of low back and right leg pain, with a daily pain level of nine to ten. Dr. Kondamuri noted that Quinn should be able to undertake modified duty assignments, but left specific work restrictions to Dr. Haak's discretion. On October 6, 2006, Dr. Haak saw Quinn for a follow up examination and noted Quinn's increased leg and foot pain, finding that it was "in conjunction with additional activity on the job." (Appellant's App. p. 97). Dr. Haak recommended Quinn "continue with pain management and then continue with evaluation of his capability for

3

working on a construction field. He may require occupational re-education into some lighter field." (Appellant's App. p. 97). Throughout September to November 2006, Quinn's pain level ranged from six to ten; he was placed off work by November 21, 2006, and remained off work until April 2007.

On December 19, 2006, Dr. Kondamuri found Quinn to be in severe pain and recommended that Quinn receive a spinal cord stimulator on a trial basis, which Dr. Kondamuri implanted permanently on February 14, 2007. Dr. Kondamuri believed that the spinal cord stimulator provided some pain relief, and reported that Quinn's pain level decreased over time, arriving at level five and a half by March 27, 2007. On April 24, 2007, Dr. Kondamuri found Quinn to be at maximum medical improvement (MMI), and discharged him with work restrictions, permitting ten pounds of lifting, pushing and pulling frequently, and 20 pounds occasionally. However, the foregoing was kept on an "as tolerated" basis. (Exh. No. 7 p. 84). [1] On May 17, 2007, Dr. Kondamuri prepared a report to the worker's compensation insurance carrier, assessing Quinn's permanent partial impairment (PPI) to be 23% of the whole person. Dr. Kondamuri noted that Quinn received "excellent spinal cord stimulation" from the spinal cord stimulator and "excellent relief of his lumbar radicular (sciatica) pain." (Appellant's App. p. 66).

On October 9, 2007, Quinn returned to Dr. Kondamuri for an examination. Quinn reported his pain to be level eight or nine. Quinn also reported that he had returned to

---

[1] On appeal, Quinn provided both his and Accurate Builder's exhibits to the Worker's Compensation Board. We refer to Quinn's exhibits as numbered by him, e.g., "Exh. No. 7."

work in April 2007 and performed a "significant amount of bending." (Appellant's App. p. 240). Quinn's family physician, Dr. Mark Carter (Dr. Carter), had taken him off work about a month prior to this visit with Dr. Kondamuri. Dr. Kondamuri found Quinn's symptoms to result from "overuse and overwork" but believed that Quinn should "refrain from certain activities if they cause[d] him discomfort." (Appellant's App. p. 240). However, Dr. Kondamuri did not find any reason to change the restrictions in place since April 24, 2007 and also stated that Quinn remained at MMI.

On November 29, 2007, Dr. Carter noted that Quinn could only sit, stand, and walk for short periods. The following month Dr. Carter noted that Quinn's pain was getting worse, with sharp pain accompanying any movement. On January 15, 2008, Quinn saw Dr. Kondamuri again, complaining of pain in his lower left back near the spinal cord stimulator's battery. Quinn had pain levels of seven and a half. Dr. Kondamuri noted that Quinn had discomfort, but was still receiving good stimulation. He did not change Quinn's work restrictions, but noted that Quinn "states he is out of work due to no work being available with his restrictions." (Appellant's App. p. 87). Dr. Carter continued to see Quinn in early 2008, noting Quinn's continued leg pain. On June 25, 2008, Quinn went to the emergency room for back pain and was prescribed morphine. On August 26, 2008, Quinn saw Dr. Haak again. Dr. Haak noted that Quinn appeared to have residual pain from his burst lumbar vertebra fracture, that Quinn was on medications, but received brief help from the spinal cord stimulator. Dr. Haak had no further surgical recommendations and noted that Quinn would continue his off work

5

status.  Thereafter, Quinn continued to see Dr. Carter who noted that Quinn was no longer able to sit or stand without discomfort, that Quinn reported dizziness when walking, that his right foot felt heavy and numb, and that Quinn's pain had worsened.

On December 30, 2008, Quinn went to see Dr. Kondamuri again.  On February 10, 2009, Quinn reported his pain level at seven and Dr. Kondamuri scheduled a repositioning of the spinal cord stimulator to alleviate Quinn's discomfort.  He noted that Quinn "is not likely to have complete relief of pain but hopefully with [sic] have manageable control."  (Appellant's App. 89).  On February 27, 2009, Quinn's spinal cord stimulator was repositioned.  On March 5, 2009, Quinn reported his pain level to be eight to another doctor in Dr. Kondamuri's office.  On March 10, 2009, Quinn reported his pain to be level seven and a half to Dr. Kondamuri.  On April 11, 2009, Dr. Carter completed a physical residual functional capacity questionnaire, noting that Quinn had a poor prognosis and constant pain of level seven to eight.  Dr. Carter noted that Quinn was capable of low stress jobs, but could only walk less than one city block, could only sit and stand for 30 minutes at a time or for two hours during an entire day; could never lift more than 20 pounds, could rarely lift 10 pounds, could occasionally lift less than 10 pounds; and would likely miss four or more work days a month because of his condition.

On May 18, 2009, the Social Security Administration found that Quinn was disabled following the March 20, 2004 accident.  The administrative law judge (ALJ) found that although Quinn had worked following the accident, such work did not constitute substantial gainful activity.  Quinn was also found to have failed back surgery

6

syndrome with nerve impingement and ongoing radiculopathy into the right leg, and took 120 grams of morphine daily for pain. The ALJ also noted that while the ALJ had considered a medical consultant's physical assessment, he gave it little weight based upon its inconsistency with the entire record.

On April 23, 2010, Thomas Grzesik (Grzesik), a vocational expert, assessed Quinn's employability. Grzesik found that Quinn experiences constant pain in his lower back and numbness in his right foot. Quinn rated his pain level from six to nine or ten for his lower back, and from six to eight to ten for his lower extremities. Grzesik concluded that Quinn's physical limitations were not transferable to other occupations, that Quinn could no longer work as a carpenter, and given the restrictions and capabilities outlined in Quinn's medical records, could not perform any reasonable occupation and was permanently and totally disabled.

On March 20, 2006 Quinn filed for an adjustment of claim. On June 10, 2010, his claim proceeded to a hearing before a single hearing member of the Board. The same day, the parties filed their stipulation to the following relevant facts: the date of Quinn's injury; that his injury occurred at work; Quinn's injuries and surgical procedures; Quinn's PPI rating of 23% of the whole person; and that Quinn received Social Security Disability Benefits. At the hearing, Quinn was the only witness, and testified that he was currently taking several medications, including morphine tablets; that his condition became worse following Dr. Carter's physical functional capacity questionnaire; that his pain level was high and never went below level seven. Quinn also stated that he had a general

equivalency degree and had considered learning architectural engineering, but even if he could financially afford it, he could only attend classes online because of mobility issues.

On January 6, 2011, the single hearing member made the following findings of fact and conclusions of law:

5. [Quinn's] work related injury consisted of a lower back injury, including a lumbar compression fracture, for which he underwent numerous surgical procedures, including a spinal stabilization procedure; fusion with instrumentation; removal of hardware; and augmentation of the spinal fusion. [Quinn] also received treatment from a pain management specialist which has included the implementation of a spinal cord stimulator. [Accurate Builders have] paid medical expenses for the accepted injuries and related treatment.

[* * *]

8. [Quinn] has had a permanent spinal cord stimulator implanted by Dr. Kondamuri which has provided [Quinn] with pain relief in his lower extremities and in his lower back.

9. In April 2007, [Quinn] was found to be a maximum medical improvement by Dr. Shanu Kondamuri and discharged from Dr. Kondamuri's care. At that time Dr. Kondamuri placed the following work restrictions on [Quinn]: 10 pounds lifting, pushing, or pulling frequently and 20 pounds of lifting, pushing, or pulling occasionally. Those work restrictions have not been changed since that time.

10. In his May 17, 2007, [PPI] Rating Report and subsequent reports[,] Dr. Kondamuri found that most light duty assignments can be tolerated well by [Quinn].

11. Plaintiff is employable, and is not permanently and totally disabled from the March 20, 2004, work related accident contrary to the findings in the vocational report of [Grzesik].

12. In his May 17, 2007, Permanent Partial Impairment Rating Report, Dr. Kondamuri found [Quinn] had a 23% whole person PPI rating as a result of the compensable injuries sustained by [Quinn] in the March 20, 2004, work related accident.

13. [Quinn] requires on-going palliative care to reduce and/or limit the amount and extent of his impairment.

[* * *]

## V. CONCLUSIONS OF LAW

1. [Quinn] is not permanently and totally disabled from the at-work incident.

2. [Quinn] requires continuing and future medical treatment to limit and/or reduce the amount and extent of his PPI.

3. [Accurate Builders are] responsible for the payment of any outstanding medical bills and any Medicare lien and/or subrogation related to [Quinn's] work injury.

## VI. AWARD

Based upon the foregoing stipulations, findings of fact and conclusions of law, it is now THEREFORE ORDERED, ADJUDGED, AND DECREED as follows:

1. [Quinn] is awarded a 23% whole person PPI rating as a result of the compensable injuries sustained by [Quinn] in the March 20, 2004 [accident].

2. [Accurate Builders are] responsible for the payment of any outstanding medical bills related to [Quinn's] work related injury not already paid by and accepted by [Accurate Builders].

3. [Quinn] is awarded continuing and future medical treatment to limit and/or reduce the amount and extent of his PPI.

[* * *]

(Appellant's App. pp. 18-20).

On January 11, 2011, Quinn filed for review by the Board. On July 20, 2011, the

Board adopted the single hearing member's decision.

Quinn now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

9

### I. *Standard of Review*

Quinn disputes both the Board's conclusion that he is not permanently and totally disabled and those findings relied upon by the Board to reach that conclusion. We begin by noting that the claimant has the burden to prove entitlement to worker's compensation benefits, and in particular, if claiming permanent total disability, must prove that he or she 'cannot carry on reasonable types of employment.'" *Hill v. Worldmark Corporation/Mid American Extrusions Corp.*, 651 N.E.2d 785, 786 (Ind. 1995) (quoting *Perez v. U.S. Steel Corp.*, 428 N.E.2d 212, 215-16 (Ind. 1981). Where, as here, the claimant appeals from a negative award, we may sustain the negative award by an absence of evidence favorable to the claimant's contentions or by the presence of evidence adverse to the claimant's arguments. *Borgman v. Sugar Creek Animal Hospital*, 782 N.E.2d 993, 996 (Ind. Ct. App. 2002), *trans. denied*.

We employ a two-tiered standard for review of the Board's decision: (1) we examine the evidence in the record for competent evidence of probative value to support the Board's findings, and (2) we examine the findings to determine whether they are sufficient to support the decision. *Vandenberg v. Snedegar Const., Inc.*, 911 N.E.2d 681, 686-87 (Ind. Ct. App. 2009), *trans. denied*. We neither reweigh the evidence nor assess the credibility of witnesses. *Borgman*, 782 N.E.2d at 996. Only if the evidence is undisputed and leads inescapably to a result contrary to the Board's, may we disturb the Board's factual determinations. *Id*.

### II. *Sufficiency of the Evidence*

Quinn's primary argument is that the uncontroverted evidence before the Board does not support its factual findings or conclusions of law. In particular, he argues that the evidence does not support the findings in paragraphs 8, 9, 10, and 11 as well as the Board's conclusion that he is not permanently and totally disabled. We examine each of Quinn's contentions in turn.

In Finding of Fact No. 8 adopted by the Board, the single hearing member found that the spinal cord stimulator implanted by Dr. Kondamuri "provided [Quinn] with pain relief in his lower extremities and in his lower back." (Appellant's App. p 19). Quinn contends that this finding contradicts the evidence from his physicians, including Dr. Kondamuri, that after receiving the spinal cord stimulator, Quinn's pain levels worsened, his condition deteriorated, and he required additional medication, including morphine.

Here, Dr. Kondamuri's March 27, 2007, April 24, 2007, and May 27, 2007 records show that Quinn's pain levels decreased after receiving the spinal cord implant. The record therefore contains evidence adverse to Quinn's claims. To the extent that Quinn argues Dr. Kondamuri's reports lost their probative value in light of Quinn's subsequent pain increase and deteriorating condition, this is a request to reweigh the evidence presented to the Board, which we cannot do. Moreover, we note that in October 2007, Dr. Kondamuri determined that Quinn had aggravated his condition with "overuse and overwork" and Quinn's work restrictions were not thereafter changed. Because the record contains evidence adverse to Quinn's claims, we find no error with the Board's Finding of Fact No. 8.

11

In Finding of Fact No. 9, the single hearing member found that Dr. Kondamuri had determined Quinn to be at MME in April 2007, placed Quinn on work restrictions of 10 pounds lifting, pushing, or pulling frequently and 20 pounds occasionally, with those work restrictions unchanged thereafter. Quinn contends that Dr. Kondamuri in fact changed his restrictions in May 2007 and that Dr. Carter further changed his restrictions in April 2009. Quinn also points to Dr. Haak's note that Quinn was off of work in August 2008.

Contrary to Quinn's assertion, the record reveals that Dr. Kondamuri's initial work restriction issued on April 24, 2007 included the words "as tolerated." (Exh. No. 7, p. 84). This "as tolerated" restriction was maintained by Dr. Kondamuri on October 9, 2007 and Quinn provided no evidence demonstrating that Dr. Kondamuri had changed this restriction. Further, to the extent that Quinn contends Dr. Carter issued further restrictions, this is also contrary to the record. On April 13, 2007, Dr. Carter completed a physical functional capacity questionnaire reporting on Quinn's abilities. Although noting Quinn's physical capability, the report did not state a work restriction. Moreover, Dr. Carter's physical functional capacity report also indicates that Quinn was capable of low stress jobs. As the record contains evidence adverse to Quinn's contentions, we find no error in Finding of Fact No. 9.

Next, Finding of Fact No. 10 contains the single hearing member's finding that Quinn could tolerate most light duty assignments well based upon Dr. Kondamuri's May 17, 2007 PPI Report. Quinn contends here that Dr. Kondamuri's report was rendered

12

inconsequential in light of his increasing pain and deteriorating condition following his attempt to return to work as a carpenter. To the extent that Quinn asks us to reweigh the evidence, we decline to do so. Quinn also argues that Dr. Kondamuri is not a vocational expert and therefore lacks the expertise to opine on vocational factors in determining whether a reasonable likelihood of work was available to Quinn. We find this argument unduly equates Dr. Kondamuri's findings with vocational factors. The light duty assignments referred to in Dr. Kondamuri's report pertain to those of Quinn's occupation, carpentry, and were not extended to all reasonably available employment opportunities. Based upon the foregoing, we find no error with Finding of Fact No. 10.

Finally, Quinn argues that Finding of Fact No. 11 is erroneous because the single hearing member's determination that Quinn is employable runs contrary to Grzesik's vocational report, which concluded that Quinn was permanently and totally disabled. We reject this argument as a request to reweigh the evidence. Moreover, the Board is free to disregard expert opinion in its discretion. *See Hill*, 651 N.E.2d at 787. We find, therefore, that the record contains evidence supporting the Finding of Fact No. 11.

Finding that the evidence in the record supports the Board's findings, we now consider whether the findings support the Board's ultimate conclusion that Quinn did not prove he was permanently and totally disabled. A disability for purposes of worker's compensation refers to "an injured employee's inability to work." *Perry v. Stitzer Buick GMC, Inc.*, 637 N.E.2d 1282, 1288 (Ind. 1994). Specifically, "a disability determination rests on vocational factors relating to the ability of an individual to engage in reasonable

13

forms of work activity." *Van-Scyoc v. Mid-State Paving*, 787 N.E.2d 499, 509 (Ind. Ct. App. 2003).

We find that the Board's findings support the conclusion that Quinn did not prove he was permanently and totally disabled. The Board adopted the single hearing member's findings that Quinn experienced pain relief following the spinal cord stimulator, that Quinn had attained MME, that Quinn's work restrictions had not been changed, and that Quinn was employable.

Quinn argues that he has shown through his education level and physical inability that he is unable to carry on reasonable types of employment. Quinn cites to *Walker v. Muscatatuck State Development Center* to argue that "the evidence so overwhelmingly establishes Quinn's permanent total disability that […] he must be said to be permanently and totally disabled as a matter of law." (Appellant's Reply Br. p. 7). In *Walker*, the supreme court discussed what constitutes reasonable employment where an injured employee seeks permanent disability benefits despite an offer for temporary, highly accommodated work. *Walker v. Muscatatuck State Development Center*, 694 N.E.2d 258, 266-68 (Ind. 1998). Quinn likens his physical plight to the claimant in *Walker*, but the analogy is inapposite because there is no evidence of an offered position by Quinn's employer. Instead, the issue in this case is simply whether Quinn has met his burden to demonstrate entitlement to permanent disability benefits, which requires Quinn to prove his capacity, education, training, and futility to search for work. *Id.* at 265. Although Quinn offered his testimony, as well as medical provider and vocational specialist

reports, the Board discounted this evidence. We therefore need not address his argument that Accurate Builders should have produced evidence of reasonable employment available to Quinn.

In sum, Quinn had the burden to prove his eligibility for benefits based upon a permanent and total disability. Although the record contains substantial discussion of Quinn's pain and deteriorating condition, it also contains evidence adverse to Quinn's contentions such that we cannot say that the evidence inescapably leads to a result different from the Board's conclusion. Thus, we conclude that the findings support the Board's conclusion that Quinn failed to prove that he was permanently and totally disabled.

CONCLUSION

We conclude that the Board properly denied Quinn's claim for worker's compensation benefits.

Affirmed.

FRIEDLANDER, J. and MATHIAS, J. concur