

FILED

Mar 30 2017, 7:02 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Carol Modesitt Wyatt
Dugan & Voland, LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Charles S. Hewins
Hewins Law Firm
Evansville, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Masterbrand Cabinets, <br> *Appellant,* <br><br> v. <br><br> Douglas Waid, <br> *Appellee.* | March 30, 2017 <br><br> Court of Appeals Case No. <br> 93A02-1609-EX-2228 <br><br> Appeal from the Worker's <br> Compensation Board of Indiana <br><br> The Honorable Linda Peterson <br> Hamilton, Chairman <br><br> Application No. C-227286 |

**Barnes, Judge.**

## Case Summary

Masterbrand Cabinets ("Masterbrand") appeals a decision of the Indiana Worker's Compensation Board ("Board") awarding temporary total disability benefits to Douglas Waid. We affirm.

# Issue

Masterbrand raises one issue, which we restate as whether the Board properly awarded temporary total disability ("TTD") benefits to Waid following an on-the-job injury and a termination from his job for misconduct.

# Facts

Masterbrand hired Waid in June 2013 as a production associate, which involved doing physical labor. During his employment Waid was "coached" for his workplace conduct on several occasions regarding anger issues. Tr. p. 49. On June 6, 2014, Waid slipped while working and injured his lower back. Waid promptly notified his supervisor of the injury, but he initially thought that medical care would be unnecessary. However, Waid's pain got worse, and Masterbrand eventually referred him to Dr. James Butler. Waid saw Dr. Butler on June 24, 2014, complaining of shooting pains in his back and pains down into his leg. Dr. Butler determined that, "to make an absolute causation determination," he needed medical records related to Waid's prior back problems. Ex. p. 7. Dr. Butler returned Waid to "full duty." *Id.* Waid disagreed with the full duty recommendation, but he did try to return to work. After working a full shift, he was unable to get out of bed the next day. On June 26, 2014, he returned to work. Waid got into a verbal altercation with his supervisor regarding his back pain and his lack of work restrictions. He threw his ice pack, nearly striking another employee, and cursed at his supervisor. Masterbrand suspended Waid and terminated his employment effective July 2, 2014.

Waid returned to Dr. Butler on July 1, 2014, and Dr. Butler placed Waid on restrictions of "max lifting of 20 lbs and change position as often as needed." *Id.* at 12. On July 28, 2014, Waid had another appointment with Dr. Butler. Waid continued to complain of severe pain, and Dr. Butler ordered physical therapy but removed the work restrictions. On September 29, 2014, Dr. Butler released Waid from treatment, found maximum medical improvement ("MMI"), and assigned a three percent whole-person impairment rating.

In October 2014, Waid filed a motion to compel an independent medical examination ("IME") by an orthopedic surgeon or a neurosurgeon. After a hearing, the Single Hearing Member found:

2. Plaintiff immediately reported the injury to his employer.

3. Plaintiff initially told his employer that he felt he would be okay and advised that he did have prior back problems.

4. Over the ensuing weekend the condition became worse and worse.

5. Plaintiff reported the increase in symptoms to his employer but there was no immediate follow up.

6. Plaintiff was finally seen for medical examination on June 24, 2014 by James Butler, M.D. Dr. Butler seemed to be more focused on making a causation determination than active treatment. Dr. Butler

declined to place any work restriction in spite of Plaintiff's ongoing complaints of pain and limitations.

7.  With respect to Plaintiff's medical history with his back, he advised Defendant and freely admitted in testimony to his past history. He established through the evidence, however, that by June 6, 2014 he was unrestricted in his physical abilities and doing his full function for Defendant.

8.  Plaintiff was continuing to have difficulty doing full-duty, as Dr. Butler advised Defendant Plaintiff could so perform, and was upset about the impact the full-duty work was having on his back pain.

9.  One of Defendant's representatives advised Plaintiff that either he could do the job or they would get someone who would. Plaintiff was terminated shortly thereafter.

10. Plaintiff saw Dr. Butler on July 1, 2014 and, after Plaintiff advised Dr. Butler that Defendant had terminated him, Dr. Butler only then imposed a twenty (20) pound weight restriction.

11. After receiving a new MRI and comparing it with a prior one, even though Plaintiff continued to have sharp pain in his back and in his leg, which Plaintiff describes as almost unbearable, Dr. Butler released Plaintiff at maximum medical improvement.

12. The Single Hearing Member finds that the appointment of an independent medical examiner pursuant to

> Indiana Code 22-3-4-11 is appropriate in the circumstances.
>
> 13. This matter is therefore referred to the Ombudsman Division of the Worker's Compensation Board for the appointment of an independent medical examiner at the expense of Defendant as a statutory medical expense.

Appellee's App. Vol. II pp. 6-7. Dr. Mike Chou examined Waid on August 26, 2015. Dr. Chou found that Waid probably had an exacerbation of a pre-existing back condition and that "perhaps 10-20%" was attributed to the job injury. Appellant's App. Vol. II p. 52. He diagnosed Waid with "bilateral L5 radiculopathy secondary to protruding intervertebral disc at L4-5." *Id.* Dr. Chou stated that Waid "should be able to return to work at sedentary duty" but that continued symptoms might require surgery. *Id.* Further, Dr. Chou stated that Waid would "reach his point of maximum medical improvement either after this episode of pain resolves without surgery, or if not, then the patient will reach it after surgery and recovering from that." *Id.*

[6] After another hearing, the Single Hearing Member issued findings of fact and conclusions of law as follows:

> 1. Defendant introduced evidence designed to demonstrate that Plaintiff was terminated for just cause and that Plaintiff's conduct fell well below the standard reasonably expected of an employee in relation to his employer and its representatives.

2.  In the context of determining an injured worker's entitlement to temporary total disability or temporary partial disability benefits, the Board is not required (nor is it empowered) to make determinations of the justness of the termination or the level of misconduct of the injured worker.

3.  Instead, the Board must merely determine whether the injuries sustained at work produced an inability, total or partial, to work.

4.  Unquestionably Plaintiff has an inability to perform work of the same kind or character as he was performing when injured.

5.  It was Plaintiff's staunch belief that he was limited in his ability to work that resulted in the confrontation which ultimately led to his termination.

6.  Plaintiff was correct and the medical records demonstrate that Plaintiff retains only a very limited capacity to work at this point; he has been released to perform work of a sedentary nature.

7.  Plaintiff has been so limited since the date of his injury and that limitation continued through the date of hearing on this issue.

8.  Plaintiff is entitled to an award for his temporary total disability from June 27, 2014 through the date of hearing and continuing until terminated in accordance with the Act and/or when ordered by the Board.

Appellant's App. Vol. II p. 10.

Masterbrand appealed the Single Hearing Member's decision to the Full Board. Masterbrand argued in part that Waid was not entitled to TTD benefits because he had been terminated for misconduct. The Full Board affirmed the award and modified the findings of fact and conclusions of law as follows:

1. Defendant introduced evidence designed to demonstrate that Plaintiff was terminated for just cause and that Plaintiff's conduct fell below the standard reasonably expected of an employee in relation to his employer and its representatives.

2. Unquestionably Plaintiff has an inability to perform work of the same kind or character as he was performing when injured.

3. It was Plaintiff's staunch belief that he was limited in his ability to work and that the doctor showed evidence bias that resulted in the confrontation that ultimately led to his termination.

4. Plaintiff is found to be credible.

5. Furthermore, Plaintiff's inability to work was related to his work injury in question.

6. Plaintiff was correct and the medical records demonstrate that Plaintiff retains only a very limited capacity to work at this point; he has been released to perform work of a sedentary nature.

7.  Plaintiff has been so limited since the date of his injury and that limitation continued through the date of hearing on this issue.

8.  Plaintiff is entitled to an award for his temporary total disability from June 27, 2014 through the date of hearing and continuing until terminated in accordance with the Act and/or when ordered by the Board.

Appellant's App. Vol. II p. 6. Masterbrand now appeals.

## Analysis

[8] Masterbrand challenges the Board's award of TTD benefits to Waid. Our supreme court has held that the Worker's Compensation Act is to be liberally construed to "'effectuate the humane purposes of the Act.'" *Daugherty v. Indus. Contracting & Erecting*, 802 N.E.2d 912, 919 (Ind. 2004) (quoting *Talas v. Correct Piping Co., Inc.*, 435 N.E.2d 22, 28 (Ind. 1982)). "'[D]oubts in the application of terms are to be resolved in favor of the employee, for the passage of the Act was designed to shift the economic burden of a work-related injury from the injured employee to the industry and, ultimately, to the consuming public.'" *Id.* (quoting *Talas*, 435 N.E.2d at 28).

[9] In reviewing a worker's compensation decision, we are bound by the factual determinations of the Board, and we may not disturb them unless the evidence is undisputed and leads inescapably to a contrary conclusion. *Christopher R. Brown, D.D.S., Inc. v. Decatur Cty. Mem'l Hosp.*, 892 N.E.2d 642, 646 (Ind. 2008). We examine the record only to determine whether substantial evidence and

reasonable inferences support the Board's findings and conclusions. *Id.* We neither reweigh the evidence nor judge the credibility of the witnesses. *Conway ex rel. Conway v. Sch. City of E. Chicago*, 734 N.E.2d 594, 597 (Ind. Ct. App. 2000), *trans. denied*. As to the Board's interpretation of the law, we employ a deferential standard of review to the interpretation of a statute by an administrative agency charged with its enforcement in light of its expertise in the given area. *Christopher R. Brown, D.D.S.,* 892 N.E.2d at 646. We will reverse the Board only if it incorrectly interpreted the Worker's Compensation Act. *Id.*

[10]   Masterbrand argues that Waid is not entitled to TTD benefits because he was terminated for misconduct. Masterbrand contends that the Act allows the termination of TTD benefits when an employee is unable or unavailable to work for reasons unrelated to the work injury. *See* Ind. Code § 22-3-3-7(c). According to Masterbrand, Waid's "loss of earning power resulted from his loss of temper and his aggression" rather than his injury. Appellant's Br. p. 15. Masterbrand advocates that we adopt a two-part analysis to determine whether an employee is entitled to TTD benefits after termination. Under Masterbrand's approach, "an employee is not entitled to TTD benefits when terminated for cause, unless the work-related injury is the employee's sole inability to find or maintain employment." *Id.* at 19. Alternatively, Masterbrand argues that Waid was only entitled to TTD benefits for a portion of the time period ordered by the Board.

[11]     The Defense Trial Counsel of Indiana filed an amicus curiae brief in support of

Masterbrand.  Defense Trial Counsel advocated the following resolution:

> Whether an employee quits their employment or is terminated is
> irrelevant to the inquiry as to whether the employee is entitled to
> benefits.  The language of I.C. § 22-3-3-7(c) does not distinguish
> between terminated employees and those who quit their
> employment.  Rather, the unambiguous language of the Act only
> requires a finding of whether an employee is "unable or
> unavailable to work for reasons other than the work injury" to
> avoid payment of benefits.  If an employee can show that he/she
> is completely unable to work because of their work injury, even
> after a justifiable termination, then the employee would be
> entitled to recovery of benefits because the inability to work is
> now directly related to the work injury.  However, once the
> employee is released to even sedentary work, like the employee
> in *Borgman* [*v. Sugar Creek Animal Hospital*, 782 N.E.2d 993 (Ind.
> Ct. App. 2002)], the employee is no longer entitled to benefits
> because the inability to work is no longer related to the work
> injury, rather it was caused by the employee's resignation or
> violation of company policies.  To hold otherwise would tie an
> employer's hands and force them to retain misbehaving
> employees only because they sustained a work injury which puts
> all employees at a safety risk.  *See Calvert v. General Motors Corp.,
> Buick Motor Division*, 327 N.W.2d 542 (Mich. Ct. App. 1982)
> (holding employee who brought concealed weapon to work was
> terminated for cause therefore the employee was not entitled to
> disability benefits).  Further, it would force employers to treat
> injured and non-injured workers differently exposing employers
> to added litigation for its disparate treatment of employees.

Amicus Curiae Br. of Defense Trial Counsel of Indiana pp. 11-12.

[12]     On the other hand, Waid argues that he was entitled to benefits pursuant to

Indiana Code Section 22-3-3-7(a) because he did not have the ability to return

to work of the same kind or character. Waid contends that Masterbrand is improperly disputing factual findings of the Board. He argues that the Board's factual findings are fully supported by the record and cannot be reversed on appeal. Finally, he argues that the situation is adequately addressed by Indiana statutes, and it is unnecessary to look to other states or create a new test.

[13] The Indiana Trial Lawyers Association filed an amicus curiae brief in support of Waid. The Trial Lawyers Association contends that Masterbrand is requesting this court to "re-weigh the evidence and adopt a two-part analysis that has never been applied in the history of the Board or by an appellate court in Indiana." Amicus Curiae Br. of Indiana Trial Lawyers Association p. 5. The Trial Lawyers Association notes that Masterbrand's argument would set a bad precedent because "potentially any time an employee disagrees with his employer over temporary total disability . . . or any other issue surrounding his workers compensation claim, the employer could terminate him claiming employee insubordination," and it would encourage employers to create conflict "in an effort to find a reason to terminate an employee and avoid paying wage benefits under the Act." *Id.* at 7.

[14] This matter requires us to interpret the Indiana Worker's Compensation Act. The primary goal in statutory construction is to determine, give effect to, and implement the intent of the legislature. *State v. Dugan*, 793 N.E.2d 1034, 1036 (Ind. 2003). The best evidence of legislative intent is the language of the statute itself, and all words must be given their plain and ordinary meaning unless otherwise indicated by the statute. *Hendrix v. State*, 759 N.E.2d 1045, 1047 (Ind.

2001).  It is just as important to recognize what the statute does not say as it is to recognize what it does say.  *Dugan*, 793 N.E.2d at 1036.

[15] Indiana Code Section 22-3-2-2(a) requires that "[e]very employer and every employee, except as stated in IC 22-3-2 through IC 22-3-6, shall comply with the provisions of IC 22-3-2 through IC 22-3-6 respectively to pay and accept compensation for personal injury or death by accident arising out of and in the course of the employment, and shall be bound thereby."  Further, under Indiana Code Section 22-3-3-7(a), "[c]ompensation shall be allowed on account of injuries producing only temporary total disability to work or temporary partial disability to work . . . ."

[16] "The purpose of awarding temporary total disability payments under the Indiana Worker's Compensation Act is to compensate an employee for a loss of earning power because of an accidental injury arising out of, and in the course of, his or her employment."  *Cavazos v. Midwest Gen. Metals Corp.*, 783 N.E.2d 1233, 1239 (Ind. Ct. App. 2003).  "If the injured worker does not have the ability to return to work of the same kind or character during the treatment period for the injury, the worker is temporarily totally disabled and may be entitled to benefits."  *Id.*  "Once the injury has reached a permanent and quiescent state, however, the treatment period ends, and the extent of the permanent injury is assessed for compensation purposes."  *Id.*  "Thus, once the injury has stabilized to a permanent and quiescent state, temporary disability ceases, and the extent of permanent injury resulting in a degree of impairment or total disability is determined."  *Id.*

[17]     Here, there is no dispute that Waid was injured in the course of his employment at Masterbrand.  However, Masterbrand argues that Waid was not entitled to TTD benefits because he was terminated for misconduct.  In support of its argument, Masterbrand relies in part on Indiana Code Section 22-3-3-7(c), which provides:

> Once begun, temporary total disability benefits may not be terminated by the employer unless:
>
> (1)    the employee has returned to any employment;
>
> (2)    the employee has died;
>
> (3)    the employee has refused to undergo a medical examination under section 6 of this chapter or has refused to accept suitable employment under section 11 of this chapter;
>
> (4)    the employee has received five hundred (500) weeks of temporary total disability benefits or has been paid the maximum compensation allowed under section 22 of this chapter; or
>
> (5)    the employee is unable or unavailable to work for reasons unrelated to the compensable injury.

According to Masterbrand, Waid's termination was the reason for his inability to work, not Waid's injury.  *See* Ind. Code § 22-3-3-7(c)(5).  Waid properly points out that this statute is not technically applicable to this case.  The statute

applies to the *termination* of TTD benefits. Waid's appeal concerns his *entitlement* to benefits, not the *termination* of benefits.

[18] The parties rely heavily on *Borgman v. Sugar Creek Animal Hospital*, 782 N.E.2d 993 (Ind. Ct. App. 2002), *trans. denied*, and *E.F.P. Corp. v. Pendill*, 413 N.E.2d 279 (Ind. Ct. App. 1980). In *Borgman*, the employee was injured during a fall at work, and seven months later she voluntarily terminated her employment based on personal difficulties with a co-worker. A month later, she sought treatment for injuries that she claimed were related to her fall. The employee's claim was denied, and the Board found, in part, that the employee was entitled to TTD benefits for only a six-week period beginning when she left her employment and ending when a physician released her to return to sedentary work.

[19] On appeal, the employee argued that she was entitled to TTD benefits in addition to the six-week period. We held that the evidence was sufficient to support the employee's TTD benefits for the six-week period. Notwithstanding that determination, we also held:

> Borgman asserts entitlement to temporary partial disability benefits (TPD) because Sugar Creek did not offer her any work in accordance with her ability to perform sedentary work. Borgman, however, did not preserve the issue of her entitlement for such benefits at the May 16, 2000 hearing. Also, because Borgman voluntarily terminated her employment with Sugar Creek due to reasons unrelated to her work injury, Sugar Creek did not have a duty to offer her work according to medical restrictions or to remit any TPD benefits to her. Thus, the Board properly determined that Borgman was unavailable for work for reasons that were not related to her work injury. Indiana Code

section 22-3-3-7(c)(5), which provides that TTD benefits "may not be terminated by the employer unless the employee is unable or unavailable to work for reasons unrelated to the compensable injury," commands such a result in this instance. It is thus apparent that the Board concluded that Borgman failed to meet her burden of proof that she was entitled to disability benefits for the full period of February 16, 1996, to November 24, 1997, and that conclusion is supported by the evidence.

*Borgman*, 782 N.E.2d at 997. We affirmed the Board's decision. Consequently, pursuant to the Board's decision, the employee received benefits for only the six-week period.

[20] Masterbrand asserts that *Borgman* stands for the proposition that "an employee's voluntary resignation from employment, even though restricted from full duty work as a result of the work injury, renders the employee unable or unavailable to work for reasons unrelated to the work injury and, therefore ineligible for receipt of TTD benefits." Appellant's Br. p. 14. We conclude that Masterbrand is reading too much into *Borgman*. The employee in *Borgman* in fact did receive benefits for six weeks after she terminated her employment, and we affirmed that decision. The denial of her benefits related to the time period after that initial six weeks. As a result, we cannot say that *Borgman* bars an employee who has been voluntarily or involuntarily terminated from later receiving TTD benefits.

[21] In *E.F.P. Corp.*, the employee was injured during his employment and started receiving TTD benefits. After being released by the doctor and returning to work, the employee was fired "for reasons unrelated to his injury." *E.F.P.*

*Corp.*, 413 N.E.2d at 280. Later, a neurologist determined that the employee was unable to work due to the injury. The issue was whether the employee was "entitled to receive benefits from the date when his injury recurred despite the fact he was no longer employed by E.F.P." *Id.* The Board granted TTD benefits to the employee, and we affirmed. We "found no restrictive language which limits recovery of total temporary disability payments to situations where the injured employee remains with his original employer." *Id.* We held that the employer was ignoring "the fact that [the employee's] continuing unemployment is not due to his termination, but rather due to the injury he sustained while in their employment." *Id.* at 281.

[22] Even if Indiana Code Section 22-3-3-7(c) applied here, based on *E.F.P.*, the statute would not result in the denial of Waid's benefits. The statute allows the termination of benefits where the employee is unable or unavailable to work for reasons unrelated to the injury. The statute does not require the work to be for the same employer as when the employee was injured. Although Waid was terminated from his employment at Masterbrand, the relevant inquiry is whether his inability to work, even for other employers, was related to his injury. The Board here found that Waid's inability to work was related to his injury. That decision rested on a determination of Waid's credibility and weighing of the evidence. On appeal, we cannot reweigh the evidence or judge the credibility of the witnesses. *Conway*, 734 N.E.2d at 597.

[23] In fact, the worker's compensation statutes do not directly address the situation here. The General Assembly has shown that it is capable of limiting or barring

an employee's claim to worker's compensation benefits. For example, Indiana Code Section 22-3-2-8 provides:

> No compensation is allowed for an injury or death due to the employee's knowingly self-inflicted injury, his intoxication, his commission of an offense, his knowing failure to use a safety appliance, his knowing failure to obey a reasonable written or printed rule of the employer which has been posted in a conspicuous position in the place of work, or his knowing failure to perform any statutory duty.

Further, Indiana Code Section 22-3-3-11(a) provides: "If an injured employee, only partially disabled, refuses employment suitable to his capacity procured for him, he shall not be entitled to any compensation at any time during the continuance of such refusal unless in the opinion of the worker's compensation board such refusal was justifiable." The statutes, however, provide no direct bar to the claim of an employee who has been terminated prior to the start of TTD benefits. The statutes also provide no support for the new tests advocated by Masterbrand and Amicus Curiae Defense Trial Counsel of Indiana. Further, any doubts in the application of the worker's compensation statutes must be resolved in favor of the employee. *Daugherty*, 802 N.E.2d at 919. We conclude that Waid's termination for misconduct does not prevent him from receiving TTD benefits as a result of his on-the-job injury.

[24] The basic question here is whether Waid had "the ability to return to work of the same kind or character during the treatment period for the injury." *Cavazos*, 783 N.E.2d at 1239. The Board found that Waid "[u]nquestionably" was

unable to "perform work of the same kind or character" that he was performing when injured. Appellant's App. Vol. II p. 6. According to the Board, Waid "has been so limited since the date of his injury and that limitation continued through the date of hearing on this issue." *Id.* Masterbrand argues that Waid failed to present medical evidence that he was unable to work other than for the period from July 1, 2014, to July 28, 2014, and August 25, 2015, until he reaches maximum medical improvement. Waid testified that he had severe pain in his back and pain shooting down his legs and that he had been physically unable to work due to his back pain. The Board found Waid to be credible. We have held that "lay evidence, such as a claimant's own testimony, is sufficient to support an initial award of temporary total disability payments." *Tanglewood Trace v. Long*, 715 N.E.2d 410, 414 (Ind. Ct. App. 1999), *trans. denied*. Further, Dr. Chou diagnosed Waid with "bilateral L5 radiculopathy secondary to protruding intervertebral disc at L4-5" that might require surgery. Appellant's App. Vol. II p. 52. Masterbrand's argument is merely a request to reweigh the evidence, which we cannot do. *Conway*, 734 N.E.2d at 597. We conclude that the Board's decision was supported by substantial evidence and reasonable inferences support the Board's findings and conclusions. Further, we cannot say that the Board's interpretation of the worker's compensation statutes is erroneous.

# Conclusion

[25]     The Board properly awarded TTD benefits to Waid despite his termination for misconduct. We affirm.

Affirmed.

Kirsch, J., and Robb, J., concur.