FILED

Apr 19 2016, 10:55 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Nathan B. Maudlin | Stephen S. Lavallo |
| Klezmer Maudlin, P.C. | Kahn, Dees, Donovan & Kahn, LLP |
| New Harmony, Indiana | Evansville, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| William Gordon, | April 19, 2016 |
| *Appellant-Plaintiff,* | Court of Appeals Case No. 93A02-1511-EX-2066 |
| v. | Appeal from the Indiana Worker's Compensation Board |
| Toyota Motor Manufacturing of Indiana, | Application No. C-193891 |
| *Appellee-Defendant.* | |

**Najam, Judge.**

## Statement of the Case

[1] William Gordon appeals the decision of the Full Worker's Compensation Board of Indiana ("the Board") affirming the Single Hearing Member's decision awarding Gordon compensation for temporary total disability ("TTD") benefits for injuries he sustained while working for Toyota Motor Manufacturing of

Indiana ("Toyota"). Gordon presents two issues for our review, which we consolidate and restate as a single issue, namely, whether the Board erred when it awarded Gordon TTD benefits for thirty weeks instead of the more than two years of benefits Gordon had sought.

We reverse.

## Facts and Procedural History

This court stated the facts and procedural history in *Gordon v. Toyota Motor Manufacturing of Indiana*, No. 93A02-1211-EX-910, 2013 WL 1442051 at *1 (Ind. Ct. App. April 9, 2013), as follows:

> The facts stipulated to by the parties indicate that Gordon was employed by Toyota Motor Manufacturing of Indiana ("Toyota") on November 26, 2007, and earned an average weekly wage in excess of the statutory maximum. On that date, Gordon suffered an injury, affecting his left shoulder and neck, in an accident while in the course of his employment. Toyota acknowledged Gordon's accidental injury and paid for certain medical services and supplies. On July 16, 2008, a doctor furnished by Toyota, Dr. Weaver, took Gordon off work.
>
> On July 24, 2008, Dr. Titzer, another physician furnished by Toyota, released Gordon to return to work with restrictions. Although Gordon attempted to return to work, he left his employment on August 5, 2008. Subsequently, one doctor recommended no further treatment for Gordon's neck and one doctor recommended no more treatment for Gordon's shoulder. On September 29, 2009, however, Dr. Wilson recommended additional treatment for Gordon's shoulder. On October 20, 2009, Toyota notified Gordon that it would not provide the treatment recommended by Dr. Wilson. On June 7, 2010, Dr.

Miller performed surgery on Gordon's shoulder. Dr. Miller expected Gordon to return to full activity six months after the surgery and to have a full recovery without impairment. On August 11, 2008, Gordon had filed an Application for Adjustment of Claim related to his injury. Single Hearing Member Andrew S. Ward heard Gordon's claim on October 17, 2011, and on May 9, 2012, ordered Toyota to pay for certain medical treatment and to pay thirty weeks of TTD benefits. The following issues were presented for the Single Hearing Member's review: 1) whether Gordon was entitled to an award of medical services and supplies, and if so, the medical services and supplies to which he was entitled; and 2) whether Gordon was entitled to an award of TTD benefits, and if so, the period of time to which he was entitled to those benefits.

On June 5, 2012, Gordon sought review of his claim by the Board and on October 11, 2012, by a vote of 6-1, the Board adopted and affirmed the Single Hearing Member's award.

[4]     On appeal, we held as follows:

Here, there are no findings of the facts that underlie the Board's decision. Rather, the Board merely makes two unsupported legal conclusions; namely that Gordon was entitled to an award of statutory medical-expenses compensation and to thirty weeks of TTD benefits. From these sparse findings, we are unable to determine the Board's reasoning process. From the record presented to us, we are unable to determine whether the Board's determination is in accordance with the law or whether the determination is arbitrary or capricious. Thus, we are compelled to conclude that this matter must be vacated and remanded to the Board with instructions to issue findings of fact and conclusions thereon which comport with the Indiana Administrative Orders and Procedures Act such that we can conduct, if necessary, our appellate review of the Board's determination.

*Id.* at *3.

On remand, the Single Hearing Member issued new findings of fact and conclusions thereon. Paragraphs numbered one through twelve of the findings were identical to the Single Hearing Member's first decision, but the new decision included additional findings and conclusions as follows:

> 13. At hearing Plaintiff requested that the expenses of Drs. Franklin Wilson and Peter Millett be ordered paid by Defendant.
>
> 14. Plaintiff's counsel sent him for a consultative examination with Franklin D. Wilson, M.D. Dr. Wilson referred to the examination as an "Independent Medical Examination" which has a given meaning in the medical community as specifically not including medical care and treatment. Dr. Wilson's report was not of sufficient weight and authority as to merit an award against Defendant for its expense.
>
> 15. Plaintiff testified to a good recovery following the surgery by Dr. Millett. The Single Hearing Member is persuaded that Dr. Millett's treatment was appropriate and necessary to Plaintiff's condition. Dr. Millett's report established that approximately six (6) months after the operation he would expect Plaintiff to return to full activity. Plaintiff confirmed that was the case through his testimony.
>
> *CONCLUSIONS OF LAW*
>
> 1. Given the fact that Plaintiff's treatment and surgery at the hands of Dr. Millett were necessary, appropriate, and successful, Plaintiff is entitled to an award as statutory medical for such treatment and surgery beginning April 13, 2010 and ending June 7, 2010.

2. As noted in the Findings above, Dr. Weaver took Plaintiff off work on July 16, 2008. The record specifically notes that it would be for four (4) weeks.

3. Taking the four (4) week period referenced by Dr. Weaver together with the six (6) months after Dr. Millett's successful surgery, the Single Hearing Member concludes Plaintiff is entitled to an award of thirty (30) weeks of temporary total disability.

Appellant's App. at 8-9. The Full Board affirmed and adopted the Single Hearing Member's decision. This appeal ensued.

## Discussion and Decision

Gordon contends that the Board erred when it did not award him TTD benefits for the entire time of his temporary total disability, namely, from August 5, 2008, until December 7, 2010, or approximately 121 weeks. In particular, Gordon maintains that the undisputed evidence shows that, while Toyota offered him a job with restrictions following the accident, Gordon was physically unable to do that job because of his temporary total disability. Thus, Gordon asserts that his refusal to continue working for Toyota on August 5, 2008, was justifiable and he is entitled to TTD benefits for 121 weeks, not thirty weeks.

Gordon is correct that, under Indiana Code Section 22-3-3-11 (2008), an employer is permitted to reduce its worker's compensation obligation by procuring for the injured employee employment by which he can earn some wages without injury to himself. *K-Mart Corp. v. Morrison*, 609 N.E.2d 17, 31

(Ind. Ct. App. 1993), *trans. denied*. Subsection (a) of the statute provides that, if a partially disabled employee refuses employment suitable to his capacity procured for him, he shall not be entitled to any compensation at any time during the continuance of such refusal unless in the opinion of the worker's compensation board such refusal was justifiable. *Id.* Here, Gordon testified in relevant part as follows:

> Q: Okay. So Gary Weaver[, Toyota's worker's compensation liaison] called you on July 24th of 2008?
>
> A: Yes.
>
> Q: What did he tell you?
>
> A: He told me that I needed to return to work that evening, at which point I informed him that I had been to the emergency room and been in severe pain from my injuries, and I was very confused on why, you know, because of the last doctor orders I had were that I was to be off work. And he said there had been some changes and that I needed to get up and make sure I brought myself into work.
>
> Q: Okay. So Dr. Weaver took you off work for four weeks on July 16th, 2008?
>
> A: Yes.
>
> * * *
>
> Q: [Then Gary Weaver] said there had been a change and he told you to report to work on July 24th of 2008?
>
> A: Yes.

Q: Did you go back to work?

A: Yes, I did.
Q: You reported to work that night?

A: Yes, I did.

Q: What happened?

A: I was called into the IHS, the [on-site] hospital [at Toyota], to speak to the doctor and they. . . .

Q: Was this Dr. Titzer?

A: Dr. Titzer, yes.

Q: Okay. Go ahead.

A: Him and Tammy Freeman, which I believe was the specialist. I didn't understand. I'd never met her before. But I met with the both of them, and they told me there had been changes, that I was supposed to come back to work, that I was no longer to be off for this period of time and to return to work, and they were going to find something for me to do.

Q: Were you surprised that they wanted you to come back to work light-duty?

A: Yes.

Q: Okay. Were you surprised with this happening?

A: Yes, because the last time I had spoken with the doctor, I was in pain. I mean, the doctor had told me that light-duty was not sufficient, that I was in . . . .

Q: That you should be off work?

A: . . . significant pain and I should be off work, yes.

* * *

Q: Dr. Weaver took you off work and then Dr. Titzer put you back on?

A: Brought me back to work.

Q: Did you do the light-duty work that they wanted you to do after July 24th of 2008?

A: I attempted it.

Q: What was the job at this time?

A: It was what they called gate check. I had to stand and inspect different parts in different areas of the plant. It's a sedentary job where you sit and watched, you know, or inspected parts coming by but I was still was unable to do the job.

Q: Why not?

A: I was in excruciating pain. I was throwing up, nauseated. I was having migraine headaches and terrible, terrible pain. It hurt when I breathed in the back of my shoulder here (WITNESS INDICATING).

* * *

Q: Now, on August 5th, you left your employment with Toyota?

A: Yes, I did.

Q: Why did you leave?

A: Because I could no longer continue. I was in terrible, terrible shape having the headaches, you know, just miserable headaches and throwing up and medically I couldn't continue it.

Q: Were you having problems with your shoulder?
A: Yes, severe pain in my shoulder, pain when I was breathing. I could no way [sic] continue.

Q: So what did you do? Who did you talk to? Did you talk to this fellow [indicating to man in hearing room named Scott Ward]?

* * *

A: [Yes.] I told him, you know, I had to instruct people to get him to line us out. You know, I told him I could no longer continue, that medically I just, I couldn't keep it up, that I was, you know, he knew I'd been nauseated. I'd been running to the bathroom to throw up and the pain in my shoulder was terrible, and I know if I were to continue like that, I would . . . .

Q: What did he say to you?

A: That [he] had no problem with that. He said he would get my effects in order and my things in order and make sure my employment was done so I could go.

Q: Okay. So you've decided to go ahead and take yourself or leave that job?

A: Yes, I did.

Q: If you were to just walk off the job where your equipment had been but you couldn't do it, what would happen to you?

A: Well, I would have it on my record. I would have a, you know, a firing that—I've never had a firing or anything on my record. And I didn't know whether, because of the circumstances of the work comp and everything else, any future employment, I did not want a firing on my record.

Q: At this point, you had worked for Toyota for six years?

A: Yes, sir.

* * *

Q: So you decided to leave on this date voluntarily?

A: Yes.

Q: So you wouldn't be fired?

A: Yes, so I wouldn't be fired.

Appellant's App. at 31-38. Given this undisputed evidence that Gordon terminated his employment at Toyota because his work-related injuries prevented him from doing even the sedentary work he was offered on July 24, 2008, we hold that Indiana Code Section 22-3-3-11 applies here. However, the Board did not make any findings relevant to that evidence, and the Board made no determination under Indiana Code Section 22-3-3-11(a) whether Gordon's "refusal" to do the work was justifiable.[1] In this respect, the Board's findings are inadequate.

---

[1] We reject Toyota's attempt to analogize the circumstances of Gordon's leaving work to those of the claimant in *Borgman v. Sugar Creek Animal Hospital*, 782 N.E.2d 993 (Ind. Ct. App. 2002), *trans. denied*. In

[8]     But this deficiency in the findings does not require another remand. Whether or not the Board had found Gordon's refusal to do the light duty work was justifiable, Gordon is still entitled to TTD benefits beginning August 5, 2008, as a matter of law. That is because Indiana Code Section 22-3-3-11(b) provides that, *before compensation can be denied under the statute*, the employee must be served with a notice setting forth the consequences of the refusal of employment under that section. The notice must be in a form prescribed by the worker's compensation board. *Id.* Gordon maintains that Toyota did not provide him with any such notice and, thus, that Toyota could not deny him benefits based on his refusal to do the light duty work it had offered him.[2] On appeal, Toyota does not contend, and there is no evidence in the record, that Toyota complied with the notice requirement under the statute.

---

*Borgman*, the injured claimant "voluntarily terminated her employment with Sugar Creek due to reasons unrelated to her work injury[.]" *Id.* at 997. In particular, the evidence showed that Borgman "voluntarily terminated her employment at Sugar Creek because of personal difficulties that she had experienced with a co-worker." *Id.* at 994. Here, however, the undisputed evidence in this case shows that Gordon quit because of his work-related injuries. To the extent Toyota contends that Gordon was required to "request to be moved, accommodated, or for further treatment" in order to continue getting TTD benefits, Toyota does not support that contention with citation to relevant authority. Appellee's Br. at 12. And we reject Toyota's assertion that Indiana Code Section 22-3-3-11 "has no applicability to this situation whatsoever." *Id.* at 17. Toyota takes some of Gordon's testimony out of context to support its contention that Gordon "voluntarily terminated his employment[.]" *Id.* Gordon's testimony, in its entirety, was that he was physically unable to continue the light duty work because of his work-related injuries.

[2] Toyota avers that Gordon has waived this issue for our review because he raised it for the first time to the Full Board. In support of its waiver argument, Toyota cite *Four Star Fabricators v. Barrett*, 638 N.E.2d 792 (Ind. Ct. App. 1994). But in *Four Star*, we held that "Four Star's objection at the hearing for lack of foundation [for the admission a medical report] was too general and was ineffective to preserve error for appellate review of the hearing member's ruling." *Id.* at 797. Toyota does not explain how that holding relates to the issue here, namely, whether Gordon has waived the issue of Toyota's compliance with a statute by raising it for the first time to the Full Board. Our holding in *Four Star* is inapposite here.

The Full Board found that Gordon's argument on this notice issue "was raised for the first time at the Full Board arguments and no evidence was introduced at the Single Hearing Member hearing." Appellant's App. at 15. We disagree. Gordon presented evidence at the hearing before the Single Hearing Member to show that his refusal to do the light duty work was justifiable. Thus, Indiana Code Section 22-3-3-11 applies here, as a matter of law. *See, e.g.*, *Vander Woude v. First Midwest Bank*, 45 N.E.3d 847, 856 (Ind. Ct. App. 2015) (holding that, because statute applied to case as a matter of law, Bank had not waived applicability of statute by waiting until appeal to raise issue). Once Gordon testified that he had terminated his employment because he was physically unable to do the light duty work, the burden shifted to Toyota to show that it had complied with the notice provision of the statute, but Toyota did not present any such evidence. The Full Board erred to the extent that it found Gordon had waived the notice issue. Gordon was not required to point out to the Single Hearing Member that Toyota had not met its burden. Because notice was required as a matter of law, it was appropriate for Gordon to raise the notice issue for the first time to the Full Board.

Further, Gordon's argument to the Full Board on the notice issue preserved that issue for our review. This court has said that, in a worker's compensation case, we will not review a claim that was not raised before *either* the Single Hearing Member *or* the Board. *See Indiana Michigan Power Co. v. Roush*, 706 N.E.2d 1110, 1115 n.4 (Ind. Ct. App. 1999) (emphases added), *trans. denied*. Here, because Gordon raised the notice issue to the Full Board, he has not waived it.

And because there is no evidence that Toyota gave Gordon the notice required pursuant to Indiana Code Section 22-3-3-11(b), Gordon is entitled to TTD benefits from August 5, 2008, through December 7, 2010. *See, e.g.*, *K-Mart*, 609 N.E.2d at 32.

Reversed.

Robb, J., and Crone, J., concur.