

FILED

Dec 05 2025, 8:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



IN THE

# Court of Appeals of Indiana

Indiana State Health Commissioner, in the officer's official capacity, and Voices for Life, Inc.,

*Appellants-Defendants*

v.

Caitlin Bernard, M.D., and Caroline Rouse, M.D.,

*Appellees-Plaintiffs*

---

December 5, 2025

Court of Appeals Case No.
25A-PL-782

Interlocutory Appeal from the Marion Superior Court

The Honorable James A. Joven, Judge

Trial Court Cause No.
49D13-2502-PL-6359

---

**Opinion by Judge Bailey**
Judges Brown and Weissmann concur.

**Bailey, Judge.**

## Case Summary

[1] Caitlin Bernard, M.D., and Caroline Rouse, M.D. (collectively, "Doctors"), are both board-certified obstetrician-gynecologists who provide clinical care, including abortion care, in Indiana. Doctors filed a complaint against the Indiana State Health Commissioner ("the Commissioner"), in the Commissioner's official capacity, and Voices for Life, Inc. ("VFL"), an anti-abortion nonprofit organization based in South Bend (collectively, "Defendants"). Doctors sought a judgment under the Uniform Declaratory Judgment Act ("the UDJA") that a terminated pregnancy report ("TPR"), which a health care provider is statutorily required to submit to the Indiana Department of Health ("the Department") for each abortion that the provider performs, is exempt from disclosure under the Access to Public Records Act ("the APRA") as a patient medical record. Doctors also sought a preliminary injunction prohibiting the Commissioner from disclosing TPRs in response to any request made under the APRA, including those that had previously been made by VFL. After a hearing, the trial court issued an order in which it concluded that Doctors had standing to seek a declaratory judgment and were entitled to a preliminary injunction prohibiting the Commissioner from disclosing TPRs in response to any APRA request.

[2] Defendants now appeal that order, arguing that the trial court erred in concluding that Doctors have standing to seek a declaratory judgment, that the

trial court abused its discretion in granting Doctors a preliminary injunction, and that the injunction is overbroad because it also applies to APRA requests for TPRs not submitted by Doctors. We disagree and therefore affirm the trial court's order in all respects.

## Facts and Procedural History

[3] Because they play such a prominent role in the procedural history of this case, we set forth our legislature's onerous requirements for the content and submission of the TPRs at the heart of this dispute. Indiana Code Section 16-34-2-5(a) states,

> Every health care provider who performs a surgical abortion or provides, prescribes, administers, or dispenses an abortion inducing drug for the purposes of inducing an abortion shall report the performance of the abortion or the provision, prescribing, administration, or dispensing of an abortion inducing drug on a form drafted by the [Department], the purpose and function of which shall be the improvement of maternal health and life through the compilation of relevant maternal life and health factors and data, and a further purpose and function shall be to monitor all abortions performed in Indiana to assure the abortions are done only under the authorized provisions of the law. For each abortion performed and abortion inducing drug provided, prescribed, administered, or dispensed, the report shall include, among other things, the following:
>
> (1) The age of the patient.
>
> (2) Whether a waiver of consent under section 4 of this chapter was obtained.

(3) Whether a waiver of notification under section 4 of this chapter was obtained.

(4) The date and location, including the facility name and city or town, where the:

(A) pregnant woman:

(i) provided consent; and

(ii) received all information;

required under section 1.1 of this chapter; and

(B) abortion was performed or the abortion inducing drug was provided, prescribed, administered, or dispensed.

(5) The health care provider's full name and address, including the name of the physicians performing the abortion or providing, prescribing, administering, or dispensing the abortion inducing drug.

(6) The city and county where the pregnancy termination occurred.

(7) The age of the father, or the approximate age of the father if the father's age is unknown.

(8) The patient's county and state of residence.

(9) The marital status of the patient.

(10) The educational level of the patient.

(11) The race of the patient.

(12) The ethnicity of the patient.

(13) The number of the patient's previous live births.

(14) The number of the patient's deceased children.

(15) The number of the patient's spontaneous pregnancy terminations.

(16) The number of the patient's previous induced terminations.

(17) The date of the patient's last menses.

(18) The physician's determination of the gestation of the fetus in weeks.

(19) The reason for the abortion.

(20) Whether the patient indicated that the patient was seeking an abortion as a result of being:

    (A) abused;

    (B) coerced;

    (C) harassed; or

    (D) trafficked.

(21) The following information concerning the abortion or the provision, prescribing, administration, or dispensing of the abortion inducing drug:

    (A) The postfertilization age of the fetus (in weeks).

(B) The manner in which the postfertilization age was determined.

(C) The gender of the fetus, if detectable.

(D) Whether the fetus has been diagnosed with or has a potential diagnosis of having Down syndrome or any other disability.

(E) If after the earlier of the time the fetus obtains viability or the time the postfertilization age of the fetus is at least twenty (20) weeks, the medical reason for the performance of the abortion.

(22) For a surgical abortion, the medical procedure used for the abortion and, if the fetus had a postfertilization age of at least twenty (20) weeks:

(A) whether the procedure, in the reasonable judgment of the health care provider, gave the fetus the best opportunity to survive;

(B) the basis for the determination that the pregnant woman had a condition described in this chapter that required the abortion to avert the death of or serious impairment to the pregnant woman; and

(C) the name of the second doctor present, as required under IC 16-34-2-3(a)(3).

(23) For a nonsurgical abortion, the precise drugs provided, prescribed, administered, or dispensed, and the means of delivery of the drugs to the patient.

(24) For a nonsurgical abortion, that the manufacturer's instructions were provided to the patient and that the patient

signed the patient agreement.

(25) For an abortion performed before twenty (20) weeks of postfertilization age of the fetus, the medical indication by diagnosis code for the fetus and the mother.

(26) The mother's obstetrical history, including dates of other abortions, if any.

(27) Any preexisting medical conditions of the patient that may complicate the abortion.

(28) The results of pathological examinations if performed.

(29) For a surgical abortion, whether the fetus was delivered alive, and if so, how long the fetus lived.

(30) Records of all maternal deaths occurring at the location where the abortion was performed or the abortion inducing drug was provided, prescribed, administered, or dispensed.

(31) The date the form was transmitted to the [Department] and, if applicable, separately to the [Department of Child Services].

[4]     A provider is required to transmit a completed form to the Department within thirty days after the date of an abortion. Ind. Code § 16-34-2-5(b). If an abortion is for a female under sixteen years of age, the provider is required to transmit the form to the Department and separately to the Department of Child Services within three days after the abortion is performed. *Id.* Subsection (d) of the statute provides that "[e]ach failure to complete or timely transmit a form … for each abortion performed or abortion inducing drug that was provided, prescribed, administered, or dispensed, is a Class B misdemeanor." I.C. § 16-34-

2-5(d).[1] And subsection (e) of the statute requires the Department, "[o]n a quarterly basis," to

> compile a public report providing the following:
>
> (1) Statistics for the previous calendar quarter from the information submitted under this section.
>
> (2) Statistics for previous calendar years compiled by the [Department] under this subsection, with updated information for the calendar quarter that was submitted to the [Department] after the compilation of the statistics.

I.C. § 16-34-2-5(e). The Department "shall ensure that no identifying information of a pregnant woman is contained in the [public] report." *Id.*

[5] Indiana physicians operate under two complementary legal obligations regarding patient information: (1) they must maintain patient confidentiality; and (2) they must report certain information to state regulators, including the Department. *See, e.g.*, I.C. § 16-39-5-3(c)-(d) (imposing duties on medical providers to keep patients' identities confidential when releasing patients' health records to third parties); *Henry v. Cmty. Healthcare Sys. Cmty. Hosp.*, 134 N.E.3d 435, 437-38 (Ind. Ct. App. 2019) (acknowledging a historic common law duty of confidentiality owed by the physician to the patient); I.C. § 16-34-2-5(a).

---

[1] A physician's failure to transmit a TPR to the Department may also result in the revocation of the physician's license. Ind. Code § 25-22.5-8-6(b)(1).

[6] Another statute creates tension in this dynamic. The APRA presumes that government agency records are publicly accessible unless the agency proves that they fall within a statutory exception. I.C. §§ 5-14-3-1, -9(f)-(g). One such exception shields "[p]atient medical records … created by a provider" from disclosure without the patient's consent. I.C. § 5-14-3-4(a)(9). The dispute in this case centers on whether TPRs qualify as patient medical records, such that they are exempt from disclosure under the APRA through Section 5-14-3-4(a)(9).

[7] The State's position on patient confidentiality has changed dramatically over the last two years, resulting in the legal uncertainty that fueled the underlying action and this appeal. Initially, the State viewed certain patient details as confidential patient information.

[8] **July 2023:** At the Attorney General's urging, the Indiana Medical Licensing Board ("the Board") disciplined Dr. Bernard for publicly disclosing a patient's age (ten years old), state of residence (Ohio), referral date (approximately June 27, 2022), and gestational age (six weeks, three days).[2] The Board found that this information was confidential because it either identified the patient or could reasonably be used to identify her. Appellants' App. Vol. 2 at 143-44 (citing I.C. § 25-1-9-4(a)(3) and 45 C.F.R. §§ 164.502(a), 164.514).

---

[2] Pursuant to Indiana Code Section 25-1-7-2, the Office of the Attorney General "may receive, investigate, and prosecute complaints concerning regulated occupations."

**October 2023:** Under the APRA, VFL requested from the Department all TPRs filed in August 2023. The Indiana Public Access Counselor ("the PAC"), who interprets public access laws, issued an informal opinion to the Department's chief legal counsel that TPRs are medical records exempt from APRA disclosure. Citing the patient medical records exception in the APRA, the PAC reasoned that "the entirety of the [TPR] form is a medical record" and that public release of the TPRs, even if partly redacted, would "defeat the statutory purpose" of protecting patient medical records from disclosure. *Id.* at 83; *see* I.C. § 5-14-3-4(a)(9). The PAC also noted that the TPR statute requires only aggregate "public" statistics, which suggests that individual forms are non-public. Appellants' App. Vol. 2 at 83 (referring to I.C. § 16-34-2-5(e)). Ultimately, the PAC concluded that TPRs "should be withheld from disclosure in their entirety." *Id.* at 84. The Department therefore refused VFL's request for the TPRs.

The State, however, soon shifted its position on whether such information could be publicly disclosed.

**April 2024:** The Attorney General issued an advisory opinion concluding that the APRA's "exception for 'medical record[s]'" does not encompass TPRs. Attorney General, Opinion Letter 2024-2 on Non-Disclosure of Terminated Pregnancy Reports, 1 (April 11, 2024), https://www.in.gov/attorneygeneral/about-the-office/advisory/opinions [https://perma.cc/2SGX-8468]. The advisory opinion stated that TPRs may be disclosed with redactions, arguing that complete confidentiality would frustrate

the TPR statute's purpose. *Id.* (referring to I.C. § 16-34-2-5). The Attorney General promoted this view at a news conference and "wrote letters to the Governor and key members of the Indiana legislature urging them to take retaliatory action against [the Department] and the [PAC]." Appellants' App. Vol. 2 at 39.[3]

[12] **May 2024-September 2024:** Within weeks of the Attorney General's advisory opinion, VFL sued the Department to compel disclosure of TPRs, arguing that they were not exempt as patient medical records under the APRA. Doctors intervened in the lawsuit, as they were entitled to do under Indiana Code Section 5-14-3-9(e) based on the Department's denial of VFL's request for the TPRs.[4] Represented by private counsel, the Department moved to dismiss, arguing that TPRs were exempt patient medical records. The trial court granted

---

[3] This language appears in the trial court's findings in this appeal. The parties do not challenge that finding as inaccurate.

[4] Indiana Code Section 5-14-3-9(e) states,

> A person who has been denied the right to inspect or copy a public record by a public agency may file an action in the circuit or superior court of the county in which the denial occurred to compel the public agency to permit the person to inspect and copy the public record. Whenever an action is filed under this subsection, the public agency must notify each person who supplied any part of the public record at issue:
>
>> (1) that a request for release of the public record has been denied; and
>>
>> (2) whether the denial was in compliance with an informal inquiry response or advisory opinion of the public access counselor.
>
> Such persons are entitled to intervene in any litigation that results from the denial. The person who has been denied the right to inspect or copy need not allege or prove any special damage different from that suffered by the public at large.

dismissal in September 2024, finding unpersuasive VFL's claim "that the law, as written, makes the [TPRs] public records." *Id*. at 89.

[13]     **October 2024-February 2025:** VFL appealed, and the Attorney General—who had previously urged "retaliatory action" against the Department—entered an appearance on the Department's behalf. *Id*. at 39. VFL and the Attorney General then settled, with the Department agreeing to release TPRs as public records while not redacting many data points, including patient age, state of residence, gestational age, and abortion date. *Id*. at 94-96. This contradicted the Attorney General's earlier position that this same information could identify patients—the basis for Dr. Bernard's public reprimand nineteen months earlier. VFL moved to dismiss the appeal based on the settlement. Two days later, our Chief Judge granted VFL's motion and dismissed the appeal with prejudice.

[14]     That same day, Doctors filed the instant complaint against Defendants under the UDJA, seeking a declaratory judgment that TPRs are patient medical records and thus are exempt from disclosure under the APRA. Doctors also filed a motion for a temporary restraining order and a preliminary injunction to prohibit the Commissioner from "disclosing or otherwise providing access to [TPRs] in response to any request made under" the APRA. *Id*. at 43.

[15]     In February, the trial court held a hearing on and granted Doctors' motion for a temporary restraining order. In March, the court held a hearing on Doctors' motion for a preliminary injunction. Later that month, the trial court issued an order in which it found that Doctors had standing to seek a declaratory

judgment. The court further found that Doctors had satisfied the prerequisites for obtaining a preliminary injunction, including "establish[ing] probable success on their claim that a TPR is subject to exemption from disclosure as a [patient] medical record." Appealed Order at 11. Consequently, the court prohibited the Commissioner "from disclosing or otherwise providing access to [TPRs] created in accordance with Indiana Code section 16-34-2-5, and in response to any request made under" the APRA. *Id.* at 20.

Defendants each filed a notice of appeal of the trial court's order and a motion to stay the injunction pending appeal. On May 30, this Court denied Defendants' motions to stay. This interlocutory appeal ensued.

## Discussion and Decision

### Issue One: Doctors' standing to seek a declaratory judgment

Defendants argue that the trial court erred in determining that Doctors have standing to seek a declaratory judgment. "The threshold issue of standing determines whether a litigant is entitled to have a court decide the substantive issues of a dispute." *Solarize, Ind., Inc. v. S. Ind. Gas & Elec. Co.*, 182 N.E.3d 212, 216 (Ind. 2022). "To be entitled to such a decision, a plaintiff must be a 'proper person' to invoke the court's authority." *Id.* (quoting *Horner v. Curry*, 125 N.E.3d 584, 589 (Ind. 2019)). "A party's standing to invoke this authority can be conferred either through common law or by statute." *Id.* Here, Doctors assert standing based on the UDJA.

[18] "Regardless of the alleged basis for standing, if 'plaintiffs allege no injury, there is no justiciable dispute.'" *Ehrlich v. Moss Creek Solar, LLC*, 219 N.E.3d 760, 763 (Ind. Ct. App. 2023) (quoting *City of Gary v. Nicholson*, 190 N.E.3d 349, 351 (Ind. 2022)), *trans. denied*. "An injury must be personal, direct, and one the plaintiff has suffered or is in imminent danger of suffering." *Holcomb v. Bray*, 187 N.E.3d 1268, 1286 (Ind. 2022). Our Supreme Court has stated, "Under the [UDJA], which is designed to allow parties to resolve conflicts while there is still time for 'peaceable judicial settlement,' plaintiffs can satisfy the injury requirement by showing their rights are implicated in such a way that they **could** suffer an injury." *Id.* at 1287 (emphasis added) (quoting *Volkswagenwerk, A.G. v. Watson*, 390 N.E.2d 1082, 1084-85 (Ind. Ct. App. 1979), *trans. denied*). Whether a party has standing is a legal question that we review de novo. *Hensley v. Lewis Bros. Bakeries, Inc.*, 263 N.E.3d 199, 201 (Ind. Ct. App. 2025).

[19] The UDJA "confers on the judiciary 'the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed.'" *Adams v. Hamilton Cnty.*, 255 N.E.3d 498, 503-04 (Ind. Ct. App. 2025) (quoting I.C. § 34-14-1-1). The UDJA "is 'remedial' with a stated purpose 'to settle and to afford relief from uncertainty and insecurity with respect to rights, status[,] and other legal relations,' and it 'is to be liberally construed and administered.'" *Id.* at 504 (alteration in *Adams*) (quoting I.C. § 34-14-1-12). The UDJA further provides,

> **Any person** interested under a deed, will, written contract, or other writings constituting a contract, or **whose rights, status, or**

**other legal relations are affected by a statute**, municipal ordinance, contract, or franchise, **may have determined any question of construction** or validity **arising under the** instrument, **statute**, ordinance, contract, or franchise **and obtain a declaration of rights, status, or other legal relations thereunder.**

I.C. § 34-14-1-2 (emphases added).

[20] In its order, the trial court noted that Doctors "seek a declaration of the construction of APRA" "to determine whether TPRs fall within the exemption from APRA disclosure for 'patient medical records.'" Appealed Order at 3, 7. The court also made the following relevant findings:

> [Doctors] have demonstrated sufficient injury to meet the requirements of standing. At least one of Dr. Bernard's patients left Dr. Bernard's care for an out-of-state abortion provider to avoid the public release of the patient's information via a TPR APRA request. Dr. Bernard has set forth an actual injury she suffered – the loss of a patient. Dr. Bernard's showing is also sufficient to demonstrate Dr. Rouse's standing to bring this declaratory judgment action as it follows that Dr. Rouse **could** suffer such an injury. Moreover, disclosure of a TPR, if it included any patient health information, could have a chilling effect on the patient/physician relationship. A patient could be less likely to disclose certain medical information to the physician knowing that the physician must report such information and that the Department may publicly release that information.

*Id*. at 4.

[21] We agree with the trial court's assessment.[5] We further observe that Dr. Bernard has already suffered an additional concrete injury: she was publicly reprimanded by the Board for disclosing patient information—age, state of residence, gestational age, and approximate date of treatment. Although Dr. Bernard was not disciplined for submitting a TPR containing this information to the Department—that disclosure was mandatory under Indiana Code Sections 16-34-2-5 and 25-1-9-4(a)(3)—she was disciplined for making the information publicly available.

[22] Yet this is precisely the information that TPRs must contain and which the settlement now requires the Department to make publicly available upon request. If TPRs are publicly disclosable, then every physician who submits a mandatory TPR becomes the source of information that may publicly identify their patient—the same conduct for which Dr. Bernard was sanctioned.

[23] This creates a conundrum faced by both Doctors. Physicians cannot determine the legal boundaries of patient confidentiality when the State treats identical information as both confidential and non-confidential. Dr. Bernard was sanctioned for publicly disclosing patient information—age, state of residence, gestational age, and treatment date—because it identified her patient. The State

---

[5] We also agree with the trial court's finding that Doctors did not attempt to assert their "patients' interests in maintaining the privacy of their medical records as a means for [Doctors] to bootstrap their standing." Appealed Order at 5. Accordingly, we reject Defendants' arguments to the contrary.

now deems this same information non-identifying when contained in TPRs and plans to publicly release it.

[24] Doctors also face imminent injury. The Department itself previously expressed concerns that TPRs contain "information that could be reverse engineered to identify patients—especially in smaller communities[.]" Appellants' App. Vol. 2 at 83. The Attorney General successfully argued in Dr. Bernard's disciplinary proceeding that this type of information was sufficient to identify a patient. Yet the settlement between VFL and the Department requires the Department to "release [TPRs] as public records upon lawful request" without redacting the very information that Dr. Bernard was disciplined for disclosing. *Id.* at 94.[6] Absent a judicial determination that such information is nondisclosable, disclosure will occur. When it does, Doctors may suffer concrete injuries, including reputational harm, increased harassment, and erosion of public trust.[7] Moreover, the State's contradictory positions create legal uncertainty that itself

---

[6] We are unaware of any authority for the proposition that parties to a settlement agreement may independently rewrite a statute and, without legislative clarification, give it a meaning that a court has previously rejected.

[7] Doctors allege that VFL has used TPR data as the foundation for allegedly false claims on VFL's website regarding abortion providers, including Dr. Bernard. VFL's website identified Dr. Bernard, displayed her photo, and accused her of committing four "violations" of Indiana law. Tr. Vol. 2 at 78-86; Appellees' App. Vol. 2 at 8-9. Dr. Bernard testified that she has not been prosecuted or sanctioned in connection with that conduct. She also described some of VFL's allegations as reflecting a fundamental misunderstanding of abortion requirements in Indiana. Tr. Vol. 2 at 81-87.

Dr. Bernard also testified that she is "harmed by the fact that they're making false claims against me that cause irreparable damage to my reputation as a physician" and "by the fact that these are inflammatory, there is real concern that publicly disseminated information like this on a website could be used to target and harm myself and my family." *Id.* at 91. She reported being contacted by the FBI several years ago about "a threat that somebody was going to kidnap my daughter to prevent me from providing abortion[s]." *Id.* at 94-95.

constitutes injury. Doctors struggle to provide abortion care and to submit TPRs while uncertain of their intertwined obligations under the statutes that govern their professional conduct.[8]

[25] Based on the foregoing, we hold that the trial court did not err in concluding that Doctors have standing to seek a declaratory judgment.

**Issue Two: Preliminary injunction**

[26] Defendants also argue that the trial court erred in granting Doctors a preliminary injunction. "Appellate review of a preliminary injunction is 'limited and deferential.'" *In re Paternity of H.F.D.S.*, 247 N.E.3d 834, 837 (Ind. Ct. App. 2024) (quoting *State v. Econ. Freedom Fund*, 959 N.E.2d 794, 801 (Ind. 2011)), *trans. denied*. We review a trial court's grant of a preliminary injunction for an abuse of discretion, which occurs if its decision was against the logic and effect of the facts and circumstances before it or if it misinterpreted the law. *Willow Haven on 106th St., LLC v. Nagireddy*, 252 N.E.3d 418, 422 (Ind. 2025). "We review the trial court's factual findings for clear error and its legal conclusions de novo." *Id.* "We do not reweigh the evidence or assess witness credibility." *Great Lakes Anesthesia, P.C. v. O'Bryan*, 99 N.E.3d 260, 268 (Ind. Ct. App. 2018). "Rather, we consider only the evidence favorable to the judgment and the

---

[8] VFL asserts that "[i]t is absurd to suppose that [Doctors] would be disciplined for performing a duty imposed by state law, and there is no question that the [Board] would be estopped from doing so." VFL's Br. at 13. In light of the State's contradictory positions on the disclosability of TPRs and the legal uncertainty this creates, Doctors' concerns about potential discipline for complying with mandatory reporting requirements are neither speculative nor unfounded.

reasonable inferences to be drawn therefrom." *Id*. "We will reverse the trial court's judgment only when it is clearly erroneous, that is, when our review of the record leaves us with a firm conviction that a mistake has been made." *Id*.

[27] "The purpose of a preliminary injunction is to preserve the status quo pending an adjudication of a case on the merits." *Holcomb v. T.L.*, 175 N.E.3d 1177, 1180 (Ind. Ct. App. 2021).[9] To obtain a preliminary injunction, the moving party must demonstrate the following by a preponderance of the evidence: (1)

---

[9] In a separate argument, the Commissioner asserts that Doctors are using an injunction to privately enforce the APRA, where no private right of action exists. On the contrary, Doctors are merely seeking a judicial interpretation of the APRA regarding the disclosability of TPRs and requesting injunctive relief to preserve the status quo (i.e., maintaining TPRs in the Department's custody) pending an adjudication of that issue. After all, a judicial interpretation of Section 5-14-3-4(a)(9) is essential so that all parties can conform their conduct to that intended by the legislature. And it is the core constitutional function of the judiciary, not the Attorney General, "to say what the law is[.]" *Ind. Off. of Util. Consumer Couns. v. Duke Energy Ind., LLC*, 248 N.E.3d 1205, 1211 (Ind. 2024) (relying on Ind. Const. art. 3, § 1 (dividing governmental powers into "three separate departments; the Legislative, the Executive including the Administrative, and the Judicial[,]" and stating that "no person, charged with official duties under one of these departments, shall exercise any of the functions of another," except as "expressly provided" in the Constitution) and *id*. art. 7, § 1 (vesting judicial power "in one Supreme Court, one Court of Appeals, Circuit Courts, and such other courts as the General Assembly may establish")). If the final result of the instant adjudication is in Doctors' favor, local prosecutors will be responsible for enforcing TPR disclosure violations under the APRA. *See* I.C. §§ 5-14-3-10(a) (making it a Class A infraction for "a public official, or an employee or officer of a contractor or subcontractor of a public agency" to knowingly or intentionally disclose information classified as confidential by state statute), 34-28-5-1(a) ("An action to enforce a statute defining an infraction shall be brought in the name of the state of Indiana by the prosecuting attorney for the judicial circuit in which the infraction allegedly took place."). Pursuant to statute, the Attorney General may oversee but may not preclude such enforcement actions. *See* I.C. § 4-6-3-2(a) ("The attorney general shall have charge of and direct the prosecution of all civil actions that are brought in the name of the state of Indiana or any state agency."), -(c) ("This section does not affect the authority of prosecuting attorneys to prosecute civil actions.").

In any event, we note that this Court has stated that "Indiana courts may … grant executory or coercive relief in declaratory judgment actions in addition to determining the rights and status of the parties." *Artusi v. City of Mishawaka*, 519 N.E.2d 1246, 1250 (Ind. Ct. App. 1988) (relying on Ind. Trial Rule 57 and Fed. R. Civ. P. 57), *trans. denied*. The cases that the Commissioner cites to the contrary were decided long before Trial Rule 57 was adopted in 1969. *See* Commissioner's Br. at 37-38 (citing *Brindley v. Meara*, 198 N.E. 301, 303 (Ind. 1935), *Bryarly v. State*, 111 N.E.2d 277, 278-79 (Ind. 1953), and *Myers v. State Life Ins. Co.*, 110 N.E.2d 312, 313 (Ind. Ct. App. 1953)); *see also* T.R. 57 ("The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate…. Affirmative relief shall be allowed under such remedy when the right thereto is established.").

the moving party has a reasonable likelihood of success on the merits; (2) the moving party's remedies at law are inadequate and irreparable harm will occur while the case is pending; (3) the threatened injury to the moving party from a denial of the injunction outweighs the potential harm to the nonmoving party from granting the injunction; and (4) the public interest would not be disserved by granting the injunction. *In re J.B.*, 246 N.E.3d 819, 825 (Ind. Ct. App. 2024).

### *Reasonable likelihood of success on the merits*

[28] "To demonstrate this element, the moving party is not required to show that he is entitled to relief as a matter of law, but only that success on the merits is probable." *Bowling v. Nicholson*, 51 N.E.3d 439, 444 (Ind. Ct. App. 2016), *trans. denied*. Here, addressing Doctors' likelihood of success on the merits involves statutory interpretation, a question of law that we review de novo. *Clarian Health Partners v. Evans*, 848 N.E.2d 763, 765 (Ind. Ct. App. 2006), *trans. denied*. "When interpreting a statute, our primary goal is to determine and give effect to the Legislature's intent." *Perry Cnty. v. Huck*, 263 N.E.3d 138, 141 (Ind. 2025). "The best evidence of that intent is the statute's language." *Id*. at 141-42.

[29] In its order, the trial court noted that the APRA does not define the term "patient medical record,"[10] but that Indiana Code Section 1-1-4-5, which contains definitions that "apply to the construction of all Indiana statutes,

---

[10] The APRA defines "patient" by referring to Indiana Code Section 16-18-2-272(d), which states that a "patient" is "an individual who has received health care services from a provider for the examination, treatment, diagnosis, or prevention of a physical or mental condition." I.C. § 5-14-3-2(m).

unless the construction is plainly repugnant to the intent of the general assembly or the context of the statute[,]" states that a "medical record" is "written or printed information possessed by a provider[11] … concerning any diagnosis, treatment, or prognosis of the patient, unless otherwise defined." I.C. § 1-1-4-5(a)(6). The trial court found that, based on the face of the TPR form itself and the testimony of the Doctors and Justin Stover, "the Department's [Assistant] Commissioner who assists with APRA requests," the form "calls for abortion providers to provide information concerning a patient's diagnosis, treatment, or prognosis .… of the particular patient upon whom the abortion procedure was performed and for whom the TPR is submitted." Appealed Order at 11. Thus, the court concluded that Doctors had "established probable success on their claim that a TPR is subject to exemptions from disclosure as a [patient] medical record." *Id.*

[30]     We agree with this conclusion. Defendants contend that TPRs are not patient medical records because they do not include the patient's name.[12] But the absence of a patient's name from a TPR does not make it something other than

---

[11] Doctors note that they are required by statute to retain a signed copy of a TPR "in the pregnant woman's patient file[.]" I.C. § 16-34-2-5.1. Of course, a patient medical record in an agency's possession that is requested by a person under the APRA is not in the provider's possession, which suggests that the "possessed by a provider" language in Indiana Code Section 1-1-4-5(a)(6) is plainly repugnant to the context of Indiana Code Section 5-14-3-4(a)(9), which exempts patient medical records from disclosure.

[12] The Commissioner observes that Indiana Code Section 5-14-3-4(a)(9) allows patient medical records to be disclosed with the patient's written consent and then argues, "Obviously, a public agency cannot obtain a patient's written consent … unless the records at issue relate to someone it can identify." Commissioner's Br. at 44. We agree, and no consent has been obtained for purposes of disclosing these private TPR medical records regarding the patients' "diagnosis, treatment, or prognosis[.]" I.C. § 1-1-4-5(a)(6).

a patient medical record, just as the absence of a driver's name from a Bureau of Motor Vehicles driving record does not make it something other than a driving record. "It is just as important to recognize what [a] statute does not say as it is to recognize what it does say." *Masterbrand Cabinets v. Waid*, 72 N.E.3d 986, 992 (Ind. Ct. App. 2017). And Indiana Code Section 5-14-3-4(a)(9) does not say that a patient's name must be in a medical record for it to be considered a patient medical record under the APRA.

[31] The Commissioner further contends that the trial court erred in enjoining the release of TPRs in their entirety, noting that the APRA provides that "[i]f a public record contains disclosable and nondisclosable information, the public agency shall … separate the material that may be disclosed and make it available for inspection and copying." I.C. § 5-14-3-6(a). As mentioned above, however, the legislature has provided for the periodic release of a "public report" with statistics compiled from the TPRs submitted that quarter. I.C. § 16-34-2-5(e). We agree with the PAC that this "suggests the individual forms are non-public." Appellants' App. Vol. 2 at 83.[13] We also agree with the PAC's determination that "[s]eparation and redaction would defeat the statutory purpose of the confidentiality requirement declaring 'patient medical records'

---

[13] Doctors observe that, "[u]nlike other records exempted from disclosure under APRA, patient medical records do not become subject to disclosure seventy-five years after their creation." Appellees' Br. at 39 n.7 (quoting I.C. § 5-14-3-4(d) ("Notwithstanding any other law, a public record that is classified as confidential, other than a record concerning … patient medical records … shall be made available for inspection and copying seventy-five (75) years after the creation of that record.")). Doctors assert, and we agree, that "[t]his underscores the vital nature of the public interest in safeguarding personal health information from public disclosure." *Id.*

non-disclosable[,]" and thus "[m]edical records as monolithic documents can be withheld in their entirety." *Id*. at 83-84.[14]

### *Remedies at law are inadequate and irreparable harm will occur*

[32]    Defendants do not address whether Doctors' remedies at law are inadequate. They do, however, challenge the trial court's finding of irreparable harm. "The party seeking an injunction carries the burden of demonstrating an injury which is certain and irreparable if the injunction is denied." *Wagler Excavating Corp. v. McKibben Constr., Inc.*, 679 N.E.2d 155, 157 (Ind. Ct. App. 1997), *trans. denied*. "Irreparable harm is that harm which cannot be compensated for through damages upon resolution of the underlying action." *Coates v. Heat Wagons, Inc.*, 942 N.E.2d 905, 912 (Ind. Ct. App. 2011).

[33]    In its order, the trial court found that

> [t]he harms [Doctors] seek to avoid via the issuance of an injunction are the same harms that substantiate [Doctors'] standing to bring this declaratory judgment action. [T]he disclosure of TPRs has resulted in at least one patient leaving [Doctors'] care to seek abortion care from a provider not subject to similar requirements to disclose personal health information. The release of TPRs containing patient health information also stifles open communication between a physician and his/her patient – a patient will be unwilling to describe her symptoms and medical conditions with a doctor who is required to report

---

[14] The PAC noted that "[t]his position is also consistent with the [Board's] recent finding [in Dr. Bernard's disciplinary proceeding] that disclosure of even partial and seemingly non-identifiable information by medical providers can lead to legal consequences." Appellants' App. Vol. 2 at 84.

such discussions to the Department, with the possibility that members of the public can access that information.

Appealed Order at 12-13.

[34] Defendants contend that the foregoing harms are merely speculative. We disagree. As mentioned above, Dr. Bernard has already been disciplined by the Board for disclosing patient information that would be released to the public in a TPR if an injunction is denied, and she has already lost a patient due to concerns about her duty to disclose the patient's personal health information to the Department and the potential release of that information to the public under the APRA. The nature of these nonspeculative injuries supports the trial court's finding that Doctors' relationships with their patients will be harmed if the injunction is denied. *See Collins v. Bair*, 268 N.E.2d 95, 98 (Ind. 1971) (stating that the physician-patient "privilege has been justified on the basis that its recognition encourages free communications and frank disclosure between patient and physician which, in turn, provide assistance in proper diagnosis and appropriate treatment. To deny the privilege, it was thought, would destroy the confidential nature of the physician-patient relationship and possibly cause one suffering from a particular ailment to withhold pertinent information of an embarrassing or otherwise confidential nature for fear of being publicly exposed."). Such a harm cannot be compensated for through damages, so we find no clear error on this point.

### *Threatened injury to moving party outweighs potential harm to nonmoving party*

[35] The trial court made the following findings regarding the potential harms to Defendants that would result from an injunction:

> The Commissioner presented evidence to support the claim of potential harms the Commissioner could suffer if the Court issued an injunction. Amy Osborne formerly was the Section Chief of Licensing Enforcement at the Office of the Attorney General. Her Section was tasked with ensuring doctors comply with Indiana law, bringing enforcement actions against physicians before the [Board]. To trigger an investigation, a complaint would be filed by "anyone" – a consumer, a patient, a family member of a patient, an association, another government agency, or an organization. Osborne added that generally, the Attorney General has received complaints of abortion law violations from the public; that the complainant learned of the purported violation from information from a TPR; and that it was more likely that the Attorney General's Office would receive a complaint from the public than from the Department. In closing, VFL argued that part of its mission is to assist the Department with monitoring all abortions performed in Indiana via review of TPRs. Counsel for VFL asserted that VFL has an "interest in ensuring that the state abortion laws are being followed."
>
> But the Department has not released TPRs for over one year. Stover, the Department's Assistant Commissioner who assists with APRA requests, acknowledged that sometime in 2024, the Department had stopped releasing TPRs that were sought via APRA requests because the [PAC] issued an opinion, which led to the Department ceasing disclosure of TPRs. [Doctors] highlight the fact that though VFL could not obtain TPRs this past year, VFL could obtain the Department's quarterly public reports, which are based upon submitted TPR information. *See*

IND. CODE § 16-34-2-5(e)(1) (Quarterly, the Department "shall compile a public report … from information submitted under this section"). And, at the hearing, neither the Commissioner nor the VFL presented any evidence that the lack of TPRs hampered any abortion law enforcement whatsoever. A reasonable inference from this point suggests that the Defendants' claimed potential harm is no harm at all. Besides, it is the responsibility of the Commissioner and the Department, in conjunction with the Attorney General's Office, to uphold abortion laws – they are the state entities specifically charged with investigating and initiating enforcement actions against any doctors who fail to follow such laws. Nothing prevents the Department from reviewing the TPRs to detect possible violations, which is why the legislature requires abortion providers to submit TPRs to the Department in the first place.

To boost the Defendants' position in support of the public release of TPRs, both the Commissioner and VFL argued that the Department had previously released TPRs pursuant to APRA. At the TRO hearing, the Commissioner represented that TPRs were subject to APRA disclosure "for decades" while VFL noted that it was "common practice" for the Department to release TPRs. The Defendants presented similar arguments during the preliminary injunction hearing. These contentions, while true, do not sway this Court because the type of information an abortion provider is required to submit via a TPR changed to include information about a patient diagnosis and any reasons why the physician performed the abortion. Dr. Bernard testified that this change took place after the State of Indiana banned abortions, a change of law that ultimately took effect in August 2023. The Court surmises that Indiana's abortion ban triggered the request to the [PAC] for an opinion regarding the nature of TPRs as medical records exempt from APRA disclosure. The Court determines that the inclusion of diagnostic and treatment information on TPRs following Indiana's abortion ban nullifies any argument that the Department's prior practice of releasing TPRs should carry persuasive weight.

Appealed Order at 14-16 (footnote and citation to footnote omitted).

[36]     The court then reached the following conclusion:

> In balancing the parties' competing harms, the Court rules that
> [Doctors'] injury from the lack of an injunction to prevent TPR
> disclosure outweighs the potential harm to the Commissioner
> and VFL. The Court holds that [Doctors'] injuries (the actual and
> potential future loss of patients, as well as the stifling of open
> communication between physicians [and] their patients)
> outweigh the Defendants' potential harms (the Commissioner's
> inability to enforce the TPR law and VFL's incapacity to assist
> the Department with TPR enforcement). The potential harm the
> Defendants presented to the Court was VFL's alleged inability to
> help ensure that the state abortion laws are being followed should
> this Court enjoin the release of TPRs. Yet the Commissioner
> (and, therefore, the Department) have unfettered access to the
> TPRs and may continue to enforce the TPR law. And VFL may
> continue to review the quarterly reports and provide any
> assistance to the Department to enforce the TPR law. The Court
> is not convinced that the Defendants have suffered or will suffer
> **any** harms from the issuance of an injunction. Thus, the injuries
> to [Doctors] outweigh any potential harms to the Defendants.

*Id*. at 17.

[37]     VFL's argument that the trial court erred in balancing the equities presupposes
that it has a statutory right to access TPRs under the APRA, which is yet to be
definitively determined.[15] The Commissioner, on the other hand, argues that

---

[15] Doctors observe that if Defendants ultimately prevail, "VFL can obtain the TPRs it seeks at the conclusion of the proceedings; no one has suggested that the [Department] will fail to maintain the records until then." Appellees' Br. at 38.

the trial court's ruling means that "the State cannot disclose information of great public interest that the Governor, the Attorney General, and the Commissioner have determined must be disclosed by law[,]" and thus "[t]he injunction clearly inflicts irreparable harm." Commissioner's Br. at 50 (citation and quotation marks omitted). But this argument disregards the fundamental precept that "it is 'emphatically the province and duty of the judicial department to say what the law is.'" *Rokita v. Tully*, 235 N.E.3d 189, 202 (Ind. Ct. App. 2024) (quoting *Marbury v. Madison*, 1 Cranch 137, 177 (1803)), *trans. denied*. And we conclude that the trial court's balancing of the harms is not clearly erroneous. As long as the injunction remains in place, Doctors' confidential relationships with their patients will be preserved, and Indiana's abortion laws will continue to be enforced.

### *Public interest will not be disserved*

[38] Finally, as for whether the public interest would be disserved by granting an injunction, the trial court made the following findings:

> **1. Evidence of Public Interests:**
>
> One interest [Doctors] consistently stated was confidentiality of patient health information. Both [Doctors] worried that the release of TPRs ultimately resulted in violating the confidence of their patients because TPRs contain private health information. Dr. Bernard expressed that one reason for intervention in the earlier case was "the significant amount of protected health information that is included in [a TPR]["] and her "concern[] about the privacy of [her] patients …." Similarly, Dr. Rouse remarked that her patients "may not feel comfortable disclosing other parts of their medical history or procedures that they may

have." Stover, the Department's Assistant Commissioner who assists with APRA requests, conceded that TPRs contain potentially sensitive information that could be subject to redaction. A second interest the [Doctors] put forward was that TPR disclosure could have a chilling effect on the patient/physician relationship. A patient could be less likely to disclose certain medical information to the physician knowing that the physician must report such information and that the Department may publicly release that information.

The Defendants countered that abortion law enforcement was hindered if the public release of TPRs was enjoined. Osborne, formerly of the Attorney General's Office, remarked that the Attorney General was more likely to receive complaints of alleged TPR violations from the public than from the Department. VFL declared that the withholding of TPRs from public release would "render the AG's … ability to regulate licensed professionals … meaningless." VFL argued that the Attorney General "need[s] a third-party complaint to bring any action to the Medical Licensing Board" and that VFL has "an interest in ensuring that the state abortion laws are being followed."[16]

## 2. Serving the Public Interest:

Issuance of an injunction would serve a significant public interest – keeping a patient's information of diagnosis, treatment, and prognosis confidential, safeguarded from public disclosure. Indiana law supports this interest in APRA, making patient medical records exempt from public disclosure. Moreover, a federal law, the Health Insurance Portability and Accountability

---

[16] The Commissioner notes that "[i]f someone suspects a violation of Indiana's laws regulating the medical profession and notifies the Attorney General's Office, the Office can investigate." Commissioner's Br. at 50 (citing I.C. §§ 25-1-7-2, -5(b)). "By law, however, the Office cannot investigate without a complaint from someone outside the Office." *Id.* (citing I.C. § 25-1-7-4).

Act of 1996 (HIPAA), 42 U.S.C. § 1320d *et al.* and 45 C.F.R. Parts 160 and 164, also prevents the public disclosure of a patient's protected health information. Significantly, an injunction prohibiting the release of TPRs would give comfort to patients of abortion providers that the patient's records of medical diagnosis, treatment, or prognosis will **NOT** be released for public review. Patients of abortion providers would no longer have incentive **NOT** to share sensitive information with a physician for fear that information would be revealed.

Further, as the Court determined … above, enjoining the public release of TPRs is not harm to the Defendants – the Commissioner, via the Department, may continue to review TPRs to monitor for violations of the TPR law, and VFL may continue to assist by reviewing quarterly reports.

The Court holds that issuance of an injunction will not disserve the public interest. To the contrary, an injunction will certainly serve a vital public interest – the confidentiality of a patient's medical records.

Appealed Order at 17-19.

[39] VFL argues that the trial court "showed contempt for the judgment of the legislative branch, when it minimized that private parties like VFL play [sic] in assuring good government which is acknowledged by APRA." VFL's Br. at 31-32. Again, this argument presupposes that VFL has a statutory right to access TPRs under the APRA, and it disregards the legislative branch's decision to require the Department to compile a quarterly "public report" of TPR statistics under Section 16-34-2-5(e). VFL also complains that the court "disregarded the opinion of the Attorney General acknowledging the important role that private parties play in helping public officials perform their duty." *Id*. at 32. But the

Attorney General's opinion was only advisory and not binding on the judicial branch in any way. *See McPeek v. McCardle*, 888 N.E.2d 171, 177 n.4 (Ind. 2008) (citing *Ill.-Ind. Cable Television Ass'n v. Pub. Serv. Comm'n*, 427 N.E.2d 1100, 1111 (Ind. Ct. App. 1981)).

[40]   The Commissioner asserts that "the injunction … weakens protections for maternal health and unborn life" by "depriving the public of access to terminated pregnancy reports that could form the basis for complaints" that abortions were not performed in accordance with the law. Commissioner's Br. at 50-51. Doctors observe that the Commissioner "does not dispute that [the Department] has the authority to file such complaints as part of its broad power to enforce Indiana laws concerning health." Appellees' Br. at 37-38 (citing I.C. § 16-19-3-1)).

[41]   On that topic, the Commissioner contends,

> Saying that Department employees could submit complaints to the Attorney General's Office is no answer. The legislature did not design an oversight regime under which only the Department can submit complaints; it designed one under which both the Department *and* the public can. The preliminary injunction removes one of those oversight mechanisms, directly weakening oversight of abortion providers. That has a real-world impact. Unrebutted testimony established below that all complaints about potential violations of state laws regulating abortion providers have come from the public.

Commissioner's Br. at 51 (record citation omitted).[17]

[42] Doctors note that the trial court's injunction "does not prevent members of the public with personal knowledge of unlawful or legally questionable conduct from filing complaints with the Attorney General's office" or "affect prosecuting attorneys' ability to bring criminal enforcement proceedings against those who violate abortion laws." Appellees' Br. at 39. Finally, Doctors assert, and we agree, that Defendants' "claim that vigilantism is central to the enforcement scheme for abortion laws created by the legislature is wholly unsupported by legal authority." *Id.*

[43] In sum, we conclude that the trial court did not abuse its discretion in granting Doctors a preliminary injunction as to the TPRs submitted by Doctors.

## Issue Three: Overbroad injunction

[44] Finally, we address the Commissioner's argument that the injunction is overbroad because it also applies to APRA requests for TPRs not submitted by Doctors. This argument ignores the fact that the trial court's declaratory judgment will have statewide application because it will affect a state agency and doctors and patients throughout Indiana. To limit the injunction only to Doctors' TPRs would create an illogical and harmful result: the Department

---

[17] Additionally, the Commissioner asserts, "Saying that the public can still access the Department's quarterly reports is no answer either" because they "contain only aggregated data" and "do not provide sufficient details." Commissioner's Br. at 51. We reiterate that Indiana Code Section 16-34-2-5(e) specifically designates the quarterly reports as "public report[s]," which suggests that the legislature intended for the public to access only the "aggregated data" contained in the reports.

could release hundreds of other doctors' TPRs containing the same categories of sensitive patient information while the legal question of disclosability is being litigated. This would defeat the purpose of the preliminary injunction and irreparably harm both patient privacy and the physician-patient relationship statewide. The trial court's preliminary injunction properly maintains the status quo that has existed for over a year—to our knowledge, no TPRs have been released since it was determined that they are exempt patient medical records. Accordingly, we affirm the trial court's order in all respects.

Affirmed.

Brown, J., and Weissmann, J., concur.

ATTORNEYS FOR APPELLANT INDIANA STATE HEALTH COMMISSIONER

Theodore E. Rokita
Attorney General of Indiana

James A. Barta
Solicitor General

Katelyn E. Doering
Deputy Attorney General
Indianapolis, Indiana


ATTORNEYS FOR APPELLANT VOICES FOR LIFE, INC.

Patrick T. Gillen
The Thomas More Society
Chicago, Illinois

Benjamin D. Horvath
Horvath Legal Services, LLC
Special Counsel, The Thomas More Society
South Bend, Indiana


ATTORNEYS FOR APPELLEES

Tanya Pellegrini
Lawyering Project
San Francisco, California

Kathrine D. Jack
Jack Law Office LLC
Greenfield, Indiana

Stephanie Toti
Juanluis Rodriguez
Lawyering Project
Brooklyn, New York

Amici Curiae in Support of Appellees


American College of Obstetricians and Gynecologists and the Society for Maternal-Fetal Medicine

William R. Groth
Indianapolis, Indiana

Mark W. Sniderman
Sniderman Law
Indianapolis, Indiana

Abbe David Lowell
Brenna L. Frey
Lowell & Associates, PLLC
Washington, D.C.


Indiana State Medical Association and American Medical Association

Libby Yin Goodknight
Krieg DeVault LLP
Indianapolis, Indiana


National Abortion Federation, Inc., Physicians For Reproductive Health, and Abortion Care Network

Courtney E. Endwright
Betz + Blevins
Indianapolis, Indiana

Laura Hecht-Felella
C. A. Goldberg, PLLC
Brooklyn, New York